Russell C. LARSON, Appellant,

v.

NORTHROP CORPORATION.

No. 92–7104.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 12, 1993.

Decided April 29, 1994.

David U. Fierst, Washington, DC, argued the cause and filed the briefs for appellant.

Patricia G. Copeland, Washington, DC, argued the cause for appellee. With her on the brief were Daniel B. Stone and Charles B. Wayne, Washington, DC.

Before BUCKLEY and RANDOLPH, Circuit Judges, and LEVIN H. CAMPBELL,* Senior Circuit Judge, U.S. Court of Appeals for the First Circuit.

Opinion for the court filed by Senior Circuit Judge CAMPBELL.

LEVIN H. CAMPBELL, Senior Circuit Judge:

Russell C. Larson, plaintiff-appellant, was continuously employed by George A. Fuller Company (the "Fuller Company") from March 10, 1959, until he retired on May 1, 1985. From December 1971 until February 27, 1981, the Fuller Company was a subsidiary and/or division of Northrop Corporation, defendant-appellee. Upon acquiring the Fuller Company in 1971, Northrop terminated the existing employees' retirement plan and replaced it with the Employees' Retirement Plan of George A. Fuller Company. The latter was an "employee pension benefit plan" as defined under the Employment Retirement Income Security Act (ERISA) of 1974. See 29 U.S.C. § 1002(2) (1988). Effective January 1, 1972, Northrop purchased a group annuity contract from Prudential Insurance Company of America ("Prudential") to pay the benefits due under the pension plan it had terminated in 1971.

---

* Sitting by designation pursuant to 28 U.S.C. § 291(a).

The Employees' Retirement Plan of George A. Fuller Company (hereinafter the "Plan") was continuously in effect while the Fuller Company was affiliated with Northrop. From the relevant effective date of ERISA until March 31, 1981, when it terminated the Plan, Northrop was a "plan sponsor" and a "fiduciary" of the Plan as those terms are defined in 29 U.S.C. §§ 1002(16)(B), 1002(21) (1988). During the same period, Larson was a "participant" in the Plan within the meaning of 29 U.S.C. § 1002(7) (1988). After terminating the Plan, Northrop purchased a group annuity contract from what is now known as Principal Mutual Life Insurance Company ("Principal") on December 21, 1981, to fund the Plan pension liabilities that were required by law to be satisfied upon the Plan's termination.

On April 1, 1988, more than six years after Northrop had purchased the group annuity contract from Principal, Larson brought this action in the United States District Court for the District of Columbia, alleging, *inter alia,* that Northrop had violated its fiduciary duty to comply with the terms of the Plan under ERISA, § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D) (1988), by failing to ensure that the group annuity contracts that it had purchased from Prudential and Principal[1] would pay an early retirement subsidy that had existed under the Plan.[2] Following discovery, Larson filed a motion for summary judgment on November 30, 1988. Northrop responded by submitting a cross-motion for summary judgment on December 23, 1988. By order dated March 30, 1992, the district court denied Larson's motion for summary judgment and granted Northrop's cross-motion for summary judgment on the grounds that Larson's claim was barred by the three-year statute of limitations contained in ERISA, § 413, 29 U.S.C. § 1113 (Supp. IV 1992), and, in the alternative, that Larson was not entitled to the early retirement subsidy under the Plan's terms. *Larson v. Northrop Corp.,* No. 88–899, at 13, 1992 WL 249790 (D.D.C. Mar. 30, 1992) (memorandum opinion granting Northrop's cross-motion for summary judgment). Larson appealed. We affirm.

## I.

The Employees' Retirement Plan of George A. Fuller Company provided that an employee who was at least 55 years old and who had accumulated ten or more years of vesting or credited service was eligible to receive pension benefits. Larson had, in fact, ten or more years of vesting or credited service, and was 55 years old, when he retired from the Fuller Company on May 1, 1985.

The "normal retirement date" under the Plan was the first day of the month after an employee's 65th birthday. An employee who retired on the "normal retirement date" was eligible to receive a "normal retirement benefit." The Plan, however, also allowed employees with ten or more years of vested or credited service to receive adjusted benefits as early as age 55. These early retirement benefits were reduced from the age 65 benefit. They were calculated in one of two ways, depending upon whether a Plan participant's employment terminated before or after the age of 55. If a Plan participant's employment terminated before the age of 55, he could, upon turning 55, receive adjusted pension benefits that were the actuarial equivalent of the age 65 pension benefits. If, on the other hand, a Plan participant's employment terminated at or after age 55, he could obtain pension benefits that were reduced 5% per year for each year benefit payments were made prior to age 65. This 5% annual reduction provided an employee with pension benefits that exceeded those available to an employee who received pension benefits that were adjusted on an actuarial basis. The difference between the 5% annual reduction

---

1. The Plan, Prudential, and Principal were also named as defendants in the original complaint. The claims against those three parties, however, were dismissed without prejudice on November 7, 1988.

2. An early retirement subsidy "is the excess of the value of the early retirement benefit over the actuarial equivalent of the accrued benefit payable at the normal retirement age." Vincent Amoroso & Nick J. Zieser, *Allocating Surplus Assets in Plan Mergers or Spin–Offs,* 74 J. Tax'n 90, 93 (1991).

and the actuarial reduction is called the early retirement subsidy.

Larson was 50 years old when, on February 27, 1981, Northrop sold the Fuller Company. He continued to work for Fuller. Northrop terminated the Plan on March 31, 1981.[3] So as to fund the Plan's pension liabilities, Northrop purchased a group annuity contract from Bankers Life, now Principal Mutual Life Insurance Co. Residual amounts held in trust to provide benefits under the Plan reverted to Northrop upon satisfaction of liabilities of the Plan required by law.[4]

The group annuity contract acquired from Principal provided for an actuarial reduction for early pension benefits that commenced prior to a Plan participant's turning age 65. The contract provided for the 5% annual reduction only for participants who were already receiving pension benefits when the Plan was terminated.[5] Moreover, there was no provision in the contract with Principal for the early retirement subsidy—the difference between the 5% annual reduction stated in the Plan and the actuarial reduction generally provided for under the contract—except with respect to employees who were already receiving pension benefits at the time of the Plan's termination.

By letter dated February 24, 1982, Northrop informed Larson "that, as a result of the sale of the G.A. Fuller Company and Northrop's termination of the Employees' Retirement Plan of the G.A. Fuller Company, [he] had earned a vested benefit from that Plan." The letter also notified Larson that "this particular Plan covered service from January 1, 1972[,] up to the sale date of February 2[7], 1981," and that the pension benefits under the Plan had been insured with Principal. It further informed Larson

that he would "be eligible for an annuity at age 65 in the amount of $387.10 per month on a Straight Life basis [and that he could] elect to collect [his] benefit as early as age 55, but the above amount [would] be reduced for such early collection." The letter did not inform Larson that the early retirement benefit would be based on the actuarial reduction, omitting the 5% annual reduction option.

Shortly before his 55th birthday, Larson requested Northrop to send him the information and forms necessary to commence his pension benefits on May 1, 1985, the date he planned to retire from the Fuller Company. Northrop provided Larson with this information in a letter dated March 26, 1985. The letter contained four attachments, two of which estimated the amount of Larson's pension benefits if he waited until he turned 65 to receive them, and two of which estimated the amount of Larson's pension benefits if he chose to begin them when he turned 55. Although Northrop's letter did not expressly say so, the age 55 pension benefits estimated in the attachments were based on an actuarial reduction, not a 5% annual reduction, from the age 65 benefit, and, therefore, did not include the early retirement subsidy. Larson read the letter and reviewed its attachments. On April 1, 1985, he wrote Northrop asking for the calculations upon which his age 65 benefits had been determined.

By letter dated July 16, 1985, Northrop repeated to Larson the amount of his early retirement benefits. Larson maintains that it was this July 16, 1985, letter that for the first time told him his early retirement benefits were being adjusted by the actuarial method rather than by the 5% annual reduction method. Larson waited until April 1, 1988, to bring this action against Northrop.

3. After Northrop terminated the Plan, the Fuller Company replaced it with a new employee retirement plan. Larson's claims, however, pertain only to the pension benefits that he accrued under the Plan before Northrop terminated it on March 31, 1981.

4. The parties disagree as to what pension liabilities had to be satisfied upon the Plan's termination and whether all such liabilities were satisfied.

5. Similarly, Northrop's contract with Prudential provided for an actuarial reduction for pensions that commenced prior to age 65, and did not provide for the 5% annual reduction except for employees who were already receiving payments when the then-existent plan was terminated in 1971. Under the contract between Northrop and Prudential, the Plan remained responsible for the difference between the 5% annual reduction stated in the Plan and the actuarial reductions incorporated in the group annuity contract.

## II.

We review de novo the district court's granting of summary judgment for Northrop. "[W]e do not defer to the conclusions the [d]istrict [c]ourt drew from the record," but make our own determinations. *Elcon Enters., Inc., v. Washington Metr. Area Transit Auth.,* 977 F.2d 1472, 1478 (D.C.Cir.1992) (citing *Shields v. Eli Lilly & Co.,* 895 F.2d 1463, 1465–66 (D.C.Cir.1990), and *Parmac, Inc. v. International Ass'n of Machinists Nat'l Pension Fund Benefit Plan A,* 872 F.2d 1069, 1071 (D.C.Cir.1989)).

The relevant ERISA statute of limitations is codified at 29 U.S.C. § 1113 (Supp. IV 1992). It provides:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, *after the earlier of—*
>
> (1) *six years after (A) the date of the last action which constituted a part of the breach or violation,* or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> *except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.*

(emphasis added).[6] The district court held that Larson's action against Northrop was time-barred by § 1113(2)'s three-year statute of limitations. The court found that Larson acquired actual knowledge of Northrop's al-

leged breach of fiduciary duties when he received Northrop's letter dated March 26, 1985, more than three years before he brought this action. Even if this were so, however, the six-year statute of limitations in § 1113(1)(A) would have run out by the time Larson sued and would be the earlier of the two limitations periods to expire. We hold, therefore, that Larson's suit was barred under § 1113(1)(A). We do not, and need not, reach the question of whether the district court correctly found that the three-year limitation in § 1113(2) was triggered as early as March 26, 1985.[7]

### A. *Application of the Six–Year Statute*

■ Northrop argues on appeal that the six-year limitations period in § 1113(1)(A) bars Larson's claim. It points out that Larson's claim is that Northrop breached its fiduciary duties under ERISA when, having terminated the Fuller Plan, Northrop then failed to provide Larson with insured benefits that included the early retirement subsidy. The specific action challenged, Northrop notes, is Northrop's purchase, on December 21, 1981, of a group annuity contract for Plan liabilities that omitted the pension bonus provision. Considering this date, *i.e.,* December 21, 1981, as "the date of the last action which constituted a part of the breach or violation," *see* § 1113(1)(A), Northrop insists that the six years began to run at that time, expiring by December 21, 1987. As suit was not brought until April 1988, and as December 21, 1987, was earlier than March 26, 1988 (the date when the district court—rightly or wrongly—believed that the three years un-

---

**6.** Congress amended 29 U.S.C. § 1113 in 1987 and 1989. Those amendments have no bearing on the resolution of this case.

**7.** Moreover, because the parties do not argue, indicate, or even suggest in their briefs that Northrop's alleged breach of fiduciary duty was a "case of omission," in which event § 1113's six-year statute of limitations begins to run on "the latest date on which the fiduciary could have cured the breach or violation," 29 U.S.C. § 1113(1)(B), we do not reach or decide that issue. *See* Fed.R.App.P. 28(a)(5) ("The argument must contain the contentions of the appellant on the issues presented, and the reasons therefor, with citations to the authorities, statutes, and

parts of the record relied on."); *Corson & Gruman Co. v. NLRB,* 899 F.2d 47, 50 n. 4 (D.C.Cir. 1990) ("[T]he Company never raised the issue ... and therefore waived the argument in this case."); *Hunt v. Magnell,* 758 F.Supp. 1292, 1298–99 (D.Minn.1991) ("Neither party discusses meaningfully the import of 29 U.S.C. § 1113(1)(B) concerning fiduciary omissions. The parties appear to agree that, in the event the six-year statute of limitations set forth in section 1113(1) applies, it commenced to run on 'the date of the last action which constituted a part of the breach or violation.' 29 U.S.C. § 1113(1)(A).").

der § 1113(2) had expired), suit was barred by § 1113(1)(A).

Larson dealt initially with § 1113(1)(A) in a single sentence in a footnote to his main appellate brief. He stated:

> It is undisputed that suit was filed within six years of the last action that constituted a part of the breach, *which occurred in 1985 when the early retirement subsidy was refused.*

(emphasis added). In his reply brief, Larson reiterated this argument, insisting that "[t]he last action was the 1985 denial of the early retirement benefits," that "the breach obviously did not occur until 1985 when the subsidy was not paid," and that "[t]he breach was not complete until Larson was denied his promised benefits."

■ As Northrop observes, Larson was plainly incorrect that it is "undisputed" that suit was filed within six years of the last action that constituted a part of the breach. Northrop argued below, as well as in its present appeal, that the six-year limitations period under § 1113(1)(A) was a bar. While the district court did not address the question, finding the three-year statute of limitations to be dispositive, Northrop fully preserved the argument, which is now open for our consideration. We may, of course, affirm the district court's judgment on the basis of a different legal theory than the one it adopted. *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937) ("[T]he rule is settled that if the decision below is correct, it must be affirmed although the lower court relied upon a wrong ground or gave a wrong reason.").

To the merits of Larson's § 1113(1)(A) contention, Northrop responds that "[i]t is ridiculous to suggest that the operation of the statute of limitations must depend upon Plaintiff's age and when he feels like retiring. The ERISA statute of limitations[, § 1113,] begins to run when actions constituting the breach take place and not when actual harm is suffered by the plaintiffs." In pressing this argument, Northrop emphasizes that the Plan was not ongoing, but was actually *terminated* in 1981. This, in Northrop's view, underscores its contention that the alleged failure properly to satisfy the Plan's liabilities by purchasing · an adequate insurance annuity, as was authorized by the Plan and as is now required by ERISA,[8] § 4041(b)(3)(A), 29 U.S.C. § 1341(b)(3)(A) (1988), "was the violation."

We agree with Northrop. "Although the decision to terminate [a pension plan] is generally not subject to the fiduciary responsibility provision of ERISA, the Department [of Labor] has emphasized that activities undertaken to implement the termination decision are generally fiduciary in nature." Letter on Fiduciary Responsibility and Plan Terminations, 13 Pens. Rep. (BNA) 472 (Mar. 17, 1986); *see* 29 U.S.C. § 1002(21)(A) (1988) ("[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management or disposition of its assets."). Such activities include the acquisition of guaranteed annuity contracts upon plan termination. *See, e.g.,* Letter on Fiduciary Responsibility and Plan Terminations, 13 Pens. Rep. (BNA) 472 (Mar. 17, 1986). But once the sponsor of a terminated plan, as opposed to an ongoing plan, purchases an annuity to fund a plan's pension liabilities, the sponsor "has no further financial responsibility to [plan] participants." Gary M. Ford, *Recent Controversies Involving the*

---

**8.** "As originally enacted, ERISA did not specify the means by which the administrator should distribute benefits to participants upon plan termination." Gary M. Ford, *Recent Controversies Involving the Purchase of Irrevocable Annuities and Insurance Company Insolvencies,* C793 ALI–ABA 143, at 158 (1993). Nevertheless, Pension Benefit Guaranty Corporation regulations "generally required the plan administrator to satisfy benefit obligations through purchasing annuities from an insurance carrier." *Id.* (citing 29 C.F.R. pt. 2615 (1981), *recodified* at 29 C.F.R. pt. 2617 (1981)). As the law now stands,

an employer may not terminate a defined benefit pension plan unless the plan has sufficient assets to pay all of the plan's benefit liabilities.... As part of the termination process, the plan sponsor is required to purchase irrevocable annuity contracts from an insurance company that cover the pension benefits of all plan participants and beneficiaries (except for those who receive a lump sum distribution). *Id.* at 150.

*Purchase of Irrevocable Annuities and Insurance Company Insolvencies,* C793 ALI–ABA 143, at 148 (1993). It follows, therefore, that any violation for breach of fiduciary duty was fully completed when Northrop acquired the allegedly insufficient annuity on December 21, 1981, more than six years before Larson brought this suit. Moreover, Northrop accurately cites to three cases by United States courts of appeals all of which support its contention that a plaintiff need not suffer actual harm before § 1113 begins to run. Larson has pointed to no contrary authority, and our own research has yielded none.

In *Ziegler v. Connecticut General Life Insurance Co.,* 916 F.2d 548 (9th Cir.1990), the Ninth Circuit held that the ERISA breach or violation, if any, occurred upon execution of the challenged investment agreement containing provisions said to violate defendants' fiduciary duties. The court of appeals rejected plaintiffs' argument that § 1113 "did not begin to run until Connecticut General's alleged breach of its ERISA duties actually harmed [the corporate plaintiff]." *Ziegler,* 916 F.2d at 550.[9] The court of appeals observed that "not all ERISA actions for breach of fiduciary duties require an occurrence of harm before they will accrue." *Id.* It further ruled that "plaintiffs need not allege actual injuries to prosecute certain ERISA violations. Congress intended to make fiduciaries culpable for certain ERISA violations even in the absence of actual injury to a plan or participant." *Id.* at 551. Hence, "[u]nder 29 U.S.C. § 1104(a), . . . an ERISA plaintiff may prosecute a plan fiduciary who fails to perform for the exclusive benefit of participants and their beneficiaries regardless of cost or loss to the participants and their beneficiaries." *Id.* Applying this principle to its case, the court of appeals held that "the ERISA breach or violation, if any, occurred . . . upon execution of the 1983 investment agreement containing the 'market value' option. . . . [T]he alleged breach in Westco's case occurred upon the contract's creation." *Id.*

Under the *Ziegler* analysis, it is immaterial that in the instant case Larson suffered no actual harm until he reached 55, the earliest age his pension benefits could be due. The critical question is the date of the last action which constituted a part of the breach or violation. That date was December 21, 1981, when, having terminated the Plan, Northrop purchased and put in place an allegedly inadequate annuity to fund all the liabilities that were required by law to be satisfied upon the Plan's termination.

The Third Circuit, in *Gluck v. Unisys Corp.,* 960 F.2d 1168 (3d Cir.1992) and *International Union of Electronic, Electric, Salaried, Machine & Furniture Workers v. Murata Erie North America, Inc.,* 980 F.2d 889 (3d Cir.1992), has followed a like analysis. In *Gluck,* the plaintiffs, employees of Unisys and its predecessor, Burroughs Corporation, brought suit, alleging, *inter alia,* that those who had been responsible for operating the benefit plan in which the plaintiffs participated had breached their fiduciary duties under ERISA for causing, among other things, an improper reduction in early retirement benefits when they amended the plan in 1984 and merged it into the Unisys plan in 1988. The Third Circuit, in discussing § 1113 generally, identified "the date of the last action which formed a part of the breach." *Gluck,* 960 F.2d at 1178. According to the court of appeals:

The 1984 failure to vest fully the accrued benefits upon partial termination of a plan could constitute a violation of 26 U.S.C. § 411(d)(3), and fiduciaries responsible for that amendment might be responsible for the violation under a breach of fiduciary duty theory. *Section 1113(1)'s six-year limitations period would run from the date of the amendment's adoption.*

\*    \*    \*    \*    \*    \*

*If the 1984 transfer of assets to a new plan did impermissibly decrease benefits, and if the 1984 amendment did wrongfully channel funds from the plan to the compa-*

---

**9.** The Ninth Circuit described plaintiffs as asserting: "[N]o breach could have occurred absent actual harm to [the corporate plaintiff]. Indeed, the harm to Westco from the 'market value' option remained entirely theoretical until the March 1985 distribution." *Ziegler,* 916 F.2d at 551. These arguments, identical to Larson's here, were rejected by the Ninth Circuit.

*ny, then, absent fraud or concealment, the six-year limitations period would have begun to run at the time the 1984 amendment was adopted.*[10]

*Id.* at 1178–79 (one footnote deleted, one footnote and emphasis added).

In *International Union of Electronic, Electric, Salaried, Machine & Furniture Workers v. Murata Erie North America, Inc.*, 980 F.2d 889 (3d Cir.1992), the plaintiffs, former participants in two pension plans that had been unilaterally amended by Murata on October 25, 1985, and terminated in July 1987, alleged, *inter alia*, "that Murata breached its fiduciary duty to act in accordance with the documents governing the plan[s], [in violation of] ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D),[11] by amending the [p]lans to allow recoupment of excess funds and then actually recouping the funds." *Murata*, 980 F.2d at 894 (footnote not in original). Murata contended that the plaintiffs' claims were barred by ERISA's statute of limitations, 29 U.S.C. § 1113. In determining the date on which Murata's alleged breach of fiduciary duty had taken place, the Third Circuit accepted Murata's argument that, under a breach of fiduciary duty claim brought pursuant to ERISA, § 404, 29 U.S.C. § 1104, the participants do not have to be denied benefits before they can bring suit. Moreover, relying on its earlier decision in *Gluck*, the Third Circuit "agree[d] with Murata that the breach of fiduciary [duty] actually took place when the [p]lans were amended, on October 2[5], 1985," *id.* at 899, and that the statute of limitations under § 1113(1)(A) began to run at that time.[12]

In keeping with *Ziegler, Gluck,* and *Murata,* we find that the last action that constituted a part of Northrop's purported breach of fiduciary duties under 29 U.S.C. § 1104(a) occurred on December 21, 1981, when Northrop purchased the allegedly deficient group annuity contract from Principal in substitution for the plan it had terminated. There was no further action left to be taken by way of completing the alleged breach. *See, e.g., Murata,* 980 F.2d at 900 (finding that "Murata amended the [p]lans in a manner arguably violative of [its] fiduciary duties under ERISA § 404, 29 U.S.C. § 1104, just as the defendant in *Gluck* arguably breached its fiduciary duty by amending the plans in a manner inconsistent with another ERISA provision"). The Ninth and Third Circuits have also held in *Ziegler* and *Murata,* respectively, that, contrary to Larson's assertion, a plaintiff need not suffer harm (*i.e.,* be denied pension benefits) before he becomes entitled to bring an action under 29 U.S.C. § 1104(a). *See, e.g., Ziegler,* 916 F.2d at 551–52 ("Westco need never have suffered an actual harm for its ERISA cause of action [under 29 U.S.C. § 1104(a)] to have accrued.").

As we have said, Larson has offered no authorities running counter to the above. The parties have not cited and we have not found any relevant legislative history reflective of Congress' intent with respect to § 1113. We recognize that isolated situations can be imagined where it could seem harsh to penalize a beneficiary for not suing within six years: for example, unlike the situation here, the beneficiary might not have

10. Although the Third Circuit concluded that the last action that constituted a part of the alleged breach occurred in 1984, and the plaintiffs filed their complaint on March 2, 1990, the Third Circuit did not find that the plaintiffs' claims were time-barred by § 1113(1)(A)'s six-year statute of limitations. Apparently, the Third Circuit found that the critical date in 1984 occurred on July 1, which represented the effective date of the amendment. *See Gluck,* 960 F.2d at 1178 n. 7 (noting "that occasionally the adoption of an amendment occurs *after* its effective date" (emphasis in original)). Hence, the plaintiffs filed their action within § 1113(1)(A)'s six-year limitations period.

11. Larson's claim here was similarly brought under ERISA, § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

12. Although the plaintiffs' cause of action accrued and § 1113's six-year statute of limitations began to run when the pension plans were amended on October 25, 1985, the plaintiffs' claims were not time-barred by § 1113(1)(A) because the plaintiffs initiated their action in 1989 "less than six years after the alleged breach of fiduciary duty." *Murata,* 980 F.2d at 901.

discovered the breach within the six years.[13] However, the special provision Congress made elsewhere in § 1113 for fraud or concealment, allowing, in such cases, commencement of an action not later than six years *after the date of discovery* of the breach or violation, provides amelioration in the worst cases while, at the same time, indicating that Congress meant to toll the statute only in instances of fraud or concealment. The express use of a discovery rule in this part of § 1113, without mentioning any such principle in § 1113(1)(A), indicates that Congress had the discovery rule fully in mind but was deliberately omitting it from § 1113(1)(A). That the limitations period in § 1113(1)(A) is six years—double that in § 1113(2) where the statute of limitations is triggered by actual knowledge of the breach or violation— suggests a judgment by Congress that when six years has passed after a breach or violation, and no fraud or concealment occurs, the value of repose will trump other interests, such as a plaintiff's right to seek a remedy.[14] *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 463–64, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975) ("Although any statute of limitations is necessarily arbitrary, the length of the period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones."); *3M Co. v. Browner*, 17 F.3d 1453, 1456–57 (D.C.Cir. 1994) ("Statutes of limitations also reflect the judgment that there comes a time when the potential defendant 'ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations.'"

(quoting Note, *Developments in the Law— Statutes of Limitations*, 63 Harv.L.Rev. 1177, 1185 (1950))). As we point out, *infra*, federal and state statutes of limitations structured very much like the present have been interpreted precisely as we propose.

### B. *Was Fraud or Concealment Involved?*

■ The tolling provision in § 1113 provides "that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation." This is the only provision in § 1113 for delaying the running of the six-year limitations period until the date of discovery. Larson argues on appeal that the district court erred in not applying this provision. We disagree.

■ In *Foltz v. United States News & World Report, Inc.*, 663 F.Supp. 1494 (D.D.C. 1987), *aff'd*, 865 F.2d 364 (D.C.Cir.), *cert. denied*, 490 U.S. 1108, 109 S.Ct. 3162, 104 L.Ed.2d 1024 (1989), the United States District Court for the District of Columbia held that "fraud or concealment" in § 1113 incorporates the fraudulent concealment doctrine, which "requires the plaintiffs show (1) that defendants engaged in a course of conduct designed to conceal evidence of their alleged wrong-doing and that (2) [the plaintiffs] were not on actual or constructive notice of that evidence, despite (3) their exercise of diligence." *Id.* at 1537 (citing *Hobson v. Wilson*, 737 F.2d 1, 33–36 (D.C.Cir.1984), *cert. denied sub nom. Brennan v. Hobson*, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985)). This conclusion comports with decisions of courts of appeals that have addressed the issue.[15] *See Radiology Ctr., S.C.*

---

**13.** Here, even under Larson's version of the facts, he acquired actual knowledge well over two years before expiration of the six years, giving him ample time to have brought a timely action.

**14.** Larson argues that there is no need to fear that an inordinate amount of time—such as fifty years, as Northrop suggests—will pass before suit is brought because a proper fiduciary, as a matter of course, can be expected to "inform the beneficiary in plain English that his pension was reduced," thus triggering the three-year statute of limitations of § 1113(2). However, Congress may well have believed that, in most instances not involving fraud or concealment, the fiduciary

itself might, in good faith, be unaware of the existence of a potential claim, and should be protected from suits after six years.

**15.** Where courts of appeals seem to differ is on the issue of "whether the term 'fraud or concealment' also refers to the nature of a plaintiff's underlying claim." James F. Jordan, Waldemar J. Pflepsen, Jr. & Stephen H. Goldberg, *Handbook on ERISA Litigation* § 3.06[F], 3–135 (1992). On one hand, "[t]he Second Circuit has adopted the position that such term, in fact, encompasses situations where a plaintiff's claim of fiduciary breach involves allegations of fraud even if defendant is not alleged to have taken any steps to hide the fact of such breach." *Id.* (citing

*v. Stifel, Nicolaus & Co.*, 919 F.2d 1216, 1220 (7th Cir.1990) ("[T]he phrase 'fraud or concealment' in § 1113 'incorporates the fraudulent concealment doctrine.'" (quoting *Schaefer v. Arkansas Medical Soc'y*, 853 F.2d 1487, 1491 (8th Cir.1988) (holding that "29 U.S.C. § 1113 incorporates 'the fraudulent concealment doctrine'"))). Moreover, regardless of whether the acts to conceal the breach occur in the course of the conduct that constitutes the underlying breach or independent of and subsequent to the breach, "[t]here must be actual concealment—i.e., 'some trick or contrivance intended to exclude suspicion and prevent inquiry.'" *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1095 (7th Cir.1992) (quoting *Wood v. Carpenter*, 101 U.S. (11 Otto) 135, 143, 25 L.Ed. 807 (1879)). "*'Concealment by mere silence is not enough.'*" *Id.* at 1094 (emphasis added) (quoting *Wood v. Carpenter*, 101 U.S. (11 Otto) at 143, *quoted in Hobson*, 737 F.2d at 33).

[redacted] Another requirement is that allegations of fraudulent concealment, which toll the statute of limitations, must meet the requirements of Fed.R.Civ.P. 9(b).[16] *See, e.g., Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1415 (9th Cir.1987); *Fink v. National Sav. & Trust Co.*, 772 F.2d 951, 959 (D.C.Cir.1985); *Armstrong v. McAlpin*, 699 F.2d 79, 89 (2d Cir.1983); Waldemar J. Pflepsen, Jr., *Recent Developments in ERISA Pension Litigation Against Insurers: Trends in Fiduciary, Non-Fiduciary and Co-Fiduciary Liability*, 27 Tort & Ins. L.J. 65, 80 (1991) ("A plaintiff seeking to invoke the longer six-year ERISA provision must also properly plead fraudulent concealment."). "Thus, a plaintiff must plead with particularity the facts giving rise to the fraudulent concealment claim and must establish that they used due diligence in trying to uncover the facts." Ernest R. Higginbotham, *Motion Practice Under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure*, C607 ALI–ABA 321, at 331 (1991) (citing, among other decisions, *Volk*, 816 F.2d at 1416; *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir.1978)). In this case, Northrop points out, and the district court noted, that Larson failed to plead fraud or concealment (*i.e.*, fraudulent concealment), and raised the issue for the first time in his opposition to Northrop's cross-motion for summary judgment.

While Larson's failure properly to plead fraudulent concealment—either in his first or in his amended complaint—did not form the basis for the district court's rejection of Larson's claim of fraudulent concealment, we agree with Northrop that Larson, himself, apparently did not see this as a "case of fraud or concealment" until he was faced with the very real possibility that his case might be barred by § 1113. The actual linchpin in the district court's decision that this is not a "case of fraud or concealment" was that Larson had not "offered ... evidence [either] of any intent to deceive on the part of Northrop" or "of a false representation." Larson says the decision was erroneous, arguing this is a case of fraud or concealment because Northrop, a fiduciary, failed expressly to disclose that it had not provided for the early retirement subsidy in the guaranteed annuity contract that it had purchased from Principal.[17] We do not find

*Diduck v. Kaszycki & Sons Contractors, Inc.*, 874 F.2d 912, 919 (2d Cir.1989)). On the other hand, "[t]he Sixth, Seventh and Eighth Circuits have taken a contrary view." *Id.* (citing *Radiology Center*, 919 F.2d at 1220; *Farrell v. Automobile Club*, 870 F.2d 1129, 1131 (6th Cir.1989); *Schaefer*, 853 F.2d at 1491–92). The Seventh Circuit, however,

> has noted that acts to conceal a breach of duty may occur in the course of the conduct that constitutes the underlying breach and has held that such acts are sufficient to trigger the special six-year limitations period in the case of fraud or concealment even if they are not independent of, and subsequent to, the underlying breach. The Seventh Circuit has also held that a plaintiff may not invoke the application of § [1113's] six-year limitations period for fraud or concealment if, through plaintiff's exercise of due diligence, plaintiff would have discovered a violation.

*Id.* (citing *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1095, 1096 & n. 19 (7th Cir.1992)).

**16.** Fed.R.Civ.P. 9(b) states in relevant part:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

**17.** Larson nowhere suggests that Northrop committed acts of concealment during the course of purchasing the contract from Principal. Therefore, we need not decide whether the fraudulent

Larson's argument persuasive. While a fiduciary's mere silence could, in some circumstances, amount to fraud, it would still fall short of the fraudulent concealment that courts have required for purposes of § 1113. *See Martin,* 966 F.2d at 1095.

As we discussed, *supra,* the fraudulent concealment doctrine of § 1113 requires that the defendant engage in *active concealment*—it must undertake some "trick or contrivance" to "exclude suspicion and prevent inquiry." Such concealment must rise to something "more than merely a failure to disclose." *Schaefer,* 853 F.2d at 1491 (citing *Hobson,* 737 F.2d at 33–34 & nn. 102–03); *see* Pflepsen, *supra,* at 80 ("[A]llegations that suggest mere silence by the alleged wrongdoer may not, as a matter of law, amount to concealment." (citing *Hobson,* 737 F.2d at 33)). In this context, Larson has pointed to no evidence showing that Northrop *actively* concealed the elimination of the early retirement subsidy after it purchased the group annuity contract from Principal. Hence, Larson's claim was not tolled by virtue of § 1113's "fraud or concealment" provision.

### III.

■ Implicit in our decision is that § 1113(1)(A) starts to run "when the plaintiff's right to resort to the courts is complete, whether or not she has discovered the injury," *Connors v. Hallmark & Son Coal Co.,* 935 F.2d 336, 341 (D.C.Cir.1991),[18] rather than when "the plaintiff discovers, or with due diligence should have discovered, 'the injury that is the basis of the action,'" *id.* (quoting *Northern Cal. Retail Clerks Unions*

*& Food Employers Joint Pension Trust Fund v. Jumbo Markets, Inc.,* 906 F.2d 1371, 1372 (9th Cir.1990)). *See generally 3M Co. v. Browner,* 17 F.3d 1453, 1460–61 (D.C.Cir. 1994) (discussing the underlying principles behind the "discovery rule"). This interpretation of § 1113 comports with the construction of comparable federal and state statutes.

In *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321, *reh'g denied,* —— U.S. ——, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991), the United States Supreme Court determined that § 9(e) and § 18(c) of the Securities Exchange Act of 1934 constitute the statutes of limitations applicable to private suits brought pursuant to § 10(b) of the Securities Exchange Act of 1934, 48 Stat. 891, 15 U.S.C. § 78j(b) (1988), and to Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5 (1990), promulgated thereunder. Section 9(e) states in relevant part:

> No action shall be maintained to enforce any liability under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation.

15 U.S.C. § 78i(e) (1988). Section 18(c) similarly provides:

> No action shall be maintained to enforce any liability created under this section unless brought within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued.

15 U.S.C. § 78r(c) (1988).

In discussing the application of these statutes, the Court observed that "each of these

---

concealment doctrine of § 1113 includes "genuine acts of concealment committed in the course of the underlying wrong." *Martin,* 966 F.2d at 1095.

**18.** In *Connors,* the court had to borrow § 12–301(7) of the District of Columbia Code, which establishes a three-year limitations period for breach of contract actions, because there was no statute of limitations contained in the federal statutory provisions under which plaintiffs had brought their action. In determining whether the "discovery rule" rule was the general accrual rule in federal courts, we observed that the majority of federal courts of appeals have found that "the discovery rule is the general accrual rule in

federal courts ... [that] is to be applied in all federal question cases '*in the absence of a contrary directive from Congress.*'" *Connors,* 935 F.2d at 342 (emphasis added) (quoting *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991)). The instant case is distinguishable from *Connors* because there is a relevant federal statute of limitations containing an express discovery provision applicable in defined circumstances ("fraud or concealment"), a variant discovery rule ("actual knowledge" under § 1113(2)), and, finally, the instant provision, which lacks altogether any discovery rule ("last action" pursuant to § 1113(1)(A)).

includes some variation of a 1–year period after discovery combined with a 3–year period of repose." *Lampf*, 501 U.S. at ——, 111 S.Ct. at 2780. Moreover, it held "that the equitable tolling doctrine is fundamentally inconsistent with the 1– and 3–year structure." *Id.* 501 U.S. at ——, 111 S.Ct. at 2782. As the Court explained, "[t]he 1–year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary. The 3–year limit is a period of repose inconsistent with tolling … [and its purpose] is clearly to serve as a cutoff." *Id.* Hence, the Court concluded that "[l]itigation instituted pursuant to § 10(b) and Rule 10b–5 … must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." *Id.*

ERISA, itself, contains statutes of limitations somewhat comparable to § 1113 that apply to claims different from the one here. *See, e.g.,* 29 U.S.C. § 1303(f)(5) (1988); 29 U.S.C. § 1370(f) (1988); 29 U.S.C. § 1451(f) (1988). Section 1451(f), for instance, states:

An action under this section may not be brought after the later of [19]—

(1) 6 years after the date on which the cause of action arose, or

(2) 3 years after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action; except that in the case of fraud or concealment, such action may be brought not later than 6 years after the date of discovery of the existence of such cause of action.

29 U.S.C. § 1451(f) (footnote added). In interpreting this statute, courts of appeals have acknowledged that § 1451(f)(2), but not § 1451(f)(1), incorporates a discovery rule. *See, e.g., Central States, S.E. & S.W. Areas Pension Fund v. Navco,* 3 F.3d 167, 171, 173 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1062, 127 L.Ed.2d 382 (1994); *Joyce v. Clyde Sandoz Masonry,* 871 F.2d 1119, 1122 (D.C.Cir.) (accepting the parties' agreement that the case was ."not directly governed by the discovery element of section 1451's time bar (section 1451(f)(2), limiting

the action to when 'the plaintiff acquired or should have acquired actual knowledge of the existence of such a cause of action'), but rather by section 1451(f)(1)'s limitation of actions to '6 years after the date on which the cause of action arose' "), *cert. denied,* 493 U.S. 918, 110 S.Ct. 280, 107 L.Ed.2d 260 (1989).

Finally, Maryland has a "special statute of repose" that applies in malpractice actions brought against health care providers. This statute states:

(a) Limitations.—An action for damages for an injury arising out of the rendering of or failure to render professional services by a health care provider, as defined in § 3–2A–01 of this article, shall be filed within the earlier of:

(1) Five years of the time the injury was committed; or

(2) Three years of the date when the injury was discovered.

Md. Cts. & Jud. Proc. Code Ann. § 5–109(a) (1993). In interpreting this statute, the Court of Appeals of Maryland, the state's highest court, held:

[Section 5–109(a) ] expressly place[s] an absolute five-year period of limitation on the filing of medical malpractice claims calculated on the basis of when the injury was committed [as opposed to discovered] … and contains no room for any implied exceptions…. The three- and five-year periods of limitations must, therefore, be calculated in accordance with the literal language of § 5–109. Indeed, the five-year maximum period under the statute will run its full length only in those instances where the three-year discovery provision does not operate to bar an action at an earlier date. And this is so without regard to whether the injury was reasonably discoverable or not.

*Hill v. Fitzgerald,* 304 Md. 689, 501 A.2d 27, 32–33 (1985) (footnote omitted); *see Newell v. Richards,* 323 Md. 717, 594 A.2d 1152, 1157 (1991) (affirming its earlier decision in *Hill* that "the legislature intended to restrict the operation of the discovery rule when it enact-

---

**19.** It is important to note that, where § 1451(f) states "after the later of," § 1113 states "after the earlier of," thereby making § 1113 a more stringent statute of limitations than § 1451(f).

ed [§ 5–109(a) ]" so as "to create a total bar to malpractice actions brought after five years from the date of the alleged negligent treatment"). The Maryland court's decisions in *Hill* and *Newell* are instructive given the similarities in structure and language of Md. Cts. & Jud. Proc. Code Ann. § 5–109(a) and 29 U.S.C. § 1113. Like the Court of Appeals of Maryland in *Hill*, we follow the clear and unambiguous provisions of the controlling statute, § 1113.

## IV.

The district court found that Larson's action was time-barred by § 1113(2)'s three-year statute of limitations. We agree with the district court that Larson's action is time-barred, but we reach this result based on § 1113(1)(A)'s six-year limitations period, which was the earlier of the two provisions to expire. Accordingly, the judgment entered in Northrop's favor is affirmed.

*So ordered.*