Philip A. ADELMAN, M.D. and Lauren
Adelman, Plaintiffs,

v.

NEUROLOGY CONSULTANTS,
et al., Defendants.

No. Civ.A. 99–113.

United States District Court,
E.D. Pennsylvania.

Aug. 22, 2000.

Gary Mezzy, Alfred J. Falcione, G. Alexander Bochetto, David J. Perlman, Bochetto & Lentz, Philadelphia, PA, for Plaintiffs.

James D. Crawford, Tamsin J. Newman, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for Defendants.

**OPINION**

POLLAK, District Judge.

This is an action in which plaintiffs—Philip A. Adelman, M.D., a neurologist, and his wife, Lauren Adelman—allege that defendants, in their capacity as retirement plan administrators, violated their fiduciary duties to plaintiffs by wrongfully causing plaintiff Dr. Adelman to be excluded from receipt of the benefits of defendants' retirement and profit sharing plans. Presently before the court is defendants' motion to dismiss, or for summary judgment, in which defendants contend that plaintiffs' claims are time barred by section 413 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1113.

## Background

Defendant Neurology Consultants ("NC") is a Pennsylvania partnership that provides medical services, with a specialty in neurology. Each of the other defendants named in the present suit is a partner of NC.

In 1989 Dr. Adelman entered into an employment relationship with NC. The original terms of Dr. Adelman's employment were set forth in a letter dated May 24, 1989. Among the provisions contained in that letter was one directed at NC's pension and profit sharing plan:

> You have also stated your preference not to be covered by our pension and profit sharing plans in the first year, and if necessary, you thus agree to sign a form so stating your waiver.

Two years later, on October 1, 1991, a new document governing NC and Adelman's relationship was executed. That document, which was titled "Adelman Partnership Agreement," purported to provide for Adelman's becoming a "junior partner" of NC. The Agreement was indefinite in duration, although it contained language that it was "intended to extend from July 1, 1991 through June 30, 1992." The Agreement reveals an anticipation "that on July 1, 1998 Adelman [would] become a senior partner in Neurology Consultants." The Agreement also contained waiver language, similar to that in the 1989 letter, opting Dr. Adelman out of NC's retirement and profit-sharing plans.[1]

In December, 1995—apparently because the NC partners no longer intended to make Dr. Adelman a senior partner in 1998—a new agreement was reached that superseded the 1991 agreement. That agreement became effective on January 1, 1996. The 1996 "Adelman Employment Agreement" contained waiver language that was nearly identical to that contained in the 1991 Agreement. In 1997, Dr. Adelman's employment with NC ceased.

On January 8, 1999, plaintiffs filed their complaint in the present action. The complaint lists three counts.[2] The first charges the defendants with "interference with protected rights under" ERISA. Counts two and three claim breaches of fiduciary duty. The first of the fiduciary duty counts refers to the duty of defendants as plan administrators; the second to their duty as employers. Each count seeks enforcement pursuant to section 502 of ERISA, 29 U.S.C. § 1132. And all of the counts are directed at essentially the same alleged wrong: the defendants' participation in Dr. Adelman's exclusion from the plans.

Subsequent to the commencement of this suit, the parties arbitrated several distinct disputes related to Dr. Adelman's employment with, and termination from, NC. The arbitrator issued his final award on August 20, 1999, concluding, inter alia, that Dr. Adelman was liable for $100,000 in liquidated damages for his violation of the contract's covenant not to compete. The arbitrator was not presented with the particular claims at issue in this suit.

Defendants contend that plaintiffs' action is barred by section 413 of ERISA, 29 U.S.C. § 1113, which limits the time in which one can bring an action "with respect to a fiduciary's breach of any responsibility, duty, or obligation under" the fiduciary provisions of ERISA. Section 413 provides for a filing deadline of "six years after (A) the date of the last action which

---

1. The language of the 1991 waiver was as follows:

   Adelman agrees to opt out of the Neurology Consultants Pension Plan and the Neurology Consultants Profit Sharing Plan, regardless of his base compensation. He agrees to sign any documents requested, regarding his wavier [sic] of rights in the retirement plan.

2. Each of the counts in the complaint is listed on behalf of both Dr. Adelman and Lauren Adelman. The direct victim of each of the alleged wrongs is Dr. Adelman; Lauren Adelman's claims are necessarily derivative from, and wholly dependent on, Dr. Adelman's claims. Accordingly, Lauren Adelman's claims need not be considered separately with respect to the statute of limitations.

constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation." Alternatively, a case alleging breach of fiduciary duty must be filed "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation," if that limit is earlier than the six-year limit. These limits are excepted where discovery of the breach is hindered by fraud or concealment, in which event the statute allows actions to be filed within six years of the discovery of the fraud or concealment. *See* 29 U.S.C. § 1113.

**Discussion**

Because plaintiffs initiated this action on January 8, 1999, this suit is timely only if the date on which the limitations period began to run was after either January 8, 1993 or January 8, 1996, depending on whether plaintiffs had actual knowledge of the violations that they have alleged to have occurred.[3] There are three possibilities. First, if Dr. Adelman had actual knowledge of a breach prior to January 8 of 1996, then that breach is necessarily barred as the basis for breach of fiduciary duty under ERISA. Second, if Dr. Adelman was prevented from obtaining actual knowledge of the breach by fraud or deception, then the action is barred only if the discovery of the fraud or concealment occurred prior to January 8, 1993. Third, assuming neither actual knowledge or fraud, the action is barred if it accrued prior to January 8, 1993.

*A. When was "the last action which constituted a part of the [alleged] breach or violation"?*

We first discuss the date of the accrual of the cause of action. Plaintiffs argue that the general (six-year) statute of limitations did not begin until the implementation of the final, 1996 employment agreement, which, according to plaintiffs, was, in the words of the statute, the "last action which constituted a part of the breach." Plaintiffs rely on the unpublished Seventh Circuit opinion in *Spangler v. Altec,* 172 F.3d 53, 1999 WL 66189, *3 (7th Cir.1999), for the proposition that, for causes of action like those at issue here, " 'the last action which constituted a part of the breach' occurs when the employee takes an irrevocable action in reliance on the fiduciary's misrepresentations." Plaintiffs argue that the relevant "last action" is thus to be identified with plaintiff's last act of opting out of the plans, the last action of irrevocable reliance That act was Dr. Adelman's signing of the 1996 agreement, according to plaintiffs.

Plaintiffs argument, however, relies on a sense of the word "last" that is not the one contemplated by the statute. The "last action which constituted a part of the breach" refers to the last of the group of acts that together constitute exclusion from the Plan in violation of ERISA. It is the act that marks the line between an incomplete cause of action and a completed cause of action. The limitations period "starts to run when the plaintiff's right to resort to the courts is complete." *Larson v. Northrop Corp.,* 21 F.3d 1164, 1174 (D.C.Cir.1994). To determine the last action which constitutes the breach is equivalent to determining the event marking the first occasion on which it can be said that the breach has occurred. When a completed breach is alleged to have been re-

---

**3.** The parties have limited their discussions to the limitations imposed by section 413. It is worth noting, however, that ERISA claims not covered by section 413's limitations—that is claims not properly viewed as fiduciary claims—are subject to limitations periods prescribed by state law. *See Gluck v. Unisys Corp.,* 960 F.2d 1168, 1179 (3d Cir.1992). Under Pennsylvania law, actions "upon a contract" are subject to a four year period, 42 Pa.C.S.A. § 5525. Most other claims are subject to the Pennsylvania "catch-all" provisions that allows parties six years to initiate an action, 42 Pa.C.S.A. § 5527. Because application of either of these periods would not change the analysis in any important way, there is no need to consider whether either might be applicable. Accordingly, I limit my discussion—as have the parties—to section 413's restrictions.

peated at a later time, the chronologically subsequent alleged breach does not, of course, negate the completed breach simply because the alleged subsequent breach took place later than the completed antecedent breach's "last action."

■ If plaintiffs are correct that the signing of the 1996 contract amounted to a completed violation, then it follows that the signing of the 1991 contract also constituted a completed violation. For there is nothing about the later contract, or the actions performed by either side, that relevantly distinguishes them. In arguing that the 1996 agreement should be looked to for determination of the "last action," plaintiffs state, as support for their position, that that agreement "constituted a virtually identical repetition of the fraud perpetrated on Dr. Adelman." And indeed, there is nothing in the record that suggests otherwise. Once a breach becomes complete, it stays complete; the statute of limitations begins to run from that point and cannot be undone by another, later, event that is also relevant. Thus, the "last action" for the original breach occurred in either 1989, with the execution of the 1989 letter, or on October 1, 1991, with the execution of the 1991 agreement. Any claims based on those agreements are thus clearly barred by the general six-year statute of limitations, assuming its applicability.

The question remains whether the violation(s) that became complete in 1989 or 1991 are distinct from the violation that is alleged to have occurred in 1996. For if the 1996 agreement is viewed as a separate violation, with its own statute of limitations, then the statute of limitations would allow plaintiffs to bring an action on that violation, even if they are precluded from bringing an action on the earlier violations. Plaintiffs would then be permitted to seek whatever damages flowed from Dr. Adelman's exclusion under the 1996 agreement.

As noted above, however, the 1996 agreement did not change anything with respect to the violation that plaintiffs have alleged. The relevant context surrounding that agreement was a "virtually identical repetition" of the earlier context, and the alleged violation was essentially indistinguishable. For purposes of this action, the 1996 action did nothing but reaffirm the status quo. Indeed, the 1991 agreement had not even expired. That agreement contemplated applicability until at least 1998. Thus, the 1996 agreement may properly be classified as a mid-course amendment to the terms of the relationship between Dr. Adelman and NC. But that amendment did not materially alter any of the facts relevant to plaintiffs' claims. The exclusion from the plans continued as it had been—and was expected to for some further time—under the 1991 agreement. The execution of the 1996 agreement, therefore, was nothing more than a fortuitous event that had no effect whatsoever on the status quo—a status quo that was established no later than 1991.

■ It is, of course, the nature of the type of violation here alleged that such violations are completed at a point in time—here, Dr. Adelman's opting out of the plans—that has effects that continue into the future, perhaps indefinitely. The fact that the damages continue to mount for as long as—but only as long as—the status quo is maintained, does not affect the time when the statute of limitations begins to run. The only difference in this case is that plaintiffs have alleged a set of actions at a later time that were sufficient to constitute an independent violation. Those actions, however, did not affect the status quo any more than omitting to cancel the contract. It would thus be anomalous to view the 1996 contract, which was nothing more than a redundant reaffirmation of a prior, completed violation as marking the beginning of a new limitations period applicable to subsequent events. As noted above, the limitations period "starts to run when the plaintiff's right to resort to the courts is complete." *Larson,*

21 F.3d at 1174. Here, the 1996 agreement had no effect on the plaintiff's right to resort to the courts. It follows that plaintiffs' cause of action accrued at the time of either the 1989 or 1991 agreement, when Dr. Adelman relied on defendants' representations by opting out of the plans.

Taking the date of execution of the later agreement, October 1, 1991, as the base line, plaintiffs had six years from that date in which to commence suit—unless Dr. Adelman acquired "actual knowledge" of the alleged breach, in which case the plaintiffs had three years from the acquisition of "actual knowledge" to commence suit.[4] To this alternate statute of limitations scenerio we now turn.

### B. When did Dr. Adelman acquire "actual knowledge" of the alleged breach?

The record strongly suggests that Dr. Adelman did acquire "actual knowledge" of the breach within the meaning of the statute at the time of the breach. There is no question, of course, that Dr. Adelman was aware of the fact that he was excluded from the plans. The letter of 1989 and the agreements of 1991 and 1996 state the fact of Dr. Adelman's exclusion in unambiguous language. Plaintiffs do not contend otherwise. Instead, plaintiffs contend that knowledge of the exclusion itself is not enough to establish "actual knowledge" for purposes of the act. "[A]ctual knowledge," said the Third Circuit in *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1177 (3d Cir.1992), "requires that a plaintiff have actual knowledge of all material facts necessary to understand that some claim exists, which facts could include necessary opinions of experts, knowledge of a transaction's harmful consequences, or even actual harm." (citations omitted). Thus, plaintiffs argue that, in addition to knowledge of the exclusion, it would also have been necessary for plaintiffs to know that the plans required the employer to be the sole contributor to the fund, meaning that Dr. Adelman should have been able to receive the benefits of the plan without contributing to it by forgoing part of his salary. Without knowledge of that requirement, plaintiffs contend, Dr. Adelman lacked "knowledge of all material facts necessary to understand that some claim exists."

As noted, the *Gluck* court did not confine "actual knowledge" to an awareness of the transaction that constituted the offense. *Id.* at 1178. The *Gluck* court stated that "actual knowledge" could include other facts such as "necessary opinions of experts, knowledge of a transaction's harmful consequences, or even actual harm." *Id.* at 1177 (citations omitted). The court stressed, however, that knowledge of the illegality of the actions would not be necessary. "We emphasize ... that our holding does not mean that the statute of limitations can never begin to run until a plaintiff first consults with a lawyer." *Id.*

Plaintiffs have alleged a violation of fiduciary duty that was based on Dr. Adelman's wrongful exclusion from the plans. Plaintiffs further allege that it was wrong to exclude him because the plan did not permit what he thought he would have had to give up in order to secure participation in the plans. Thus, to understand that the claim existed, one would have had to know (1) that Dr. Adelman was excluded from the plans, and (2) the contents of the plan that supported the conclusion that it was wrong to exclude him. Plaintiffs are correct, therefore, that knowledge of the contents of the plan is among the "material facts necessary to understand" plaintiffs' claims.

Defendants have argued that this question was, in fact, resolved in their favor in the 1999 arbitration award. The arbitrator, however, was not faced with the issue

---

4. Additionally, if it were shown that, for some period of time subsequent to the alleged breach, fraud or concealment by defendants prevented plaintiffs from apprehending that they had a cause of action, the running of the statute of limitations would be tolled during such period of time. That possibility is discussed in section C, *infra*.

of whether Dr. Adelman had actual knowledge of the provision of the plans relevant here. And the arbitrator was concerned primarily with the parties' compliance with the terms of the 1996 agreement. Thus, even if the arbitrator had resolved the issue of knowledge with respect to the 1996 agreement, which he did not, the award could not conclusively establish that Dr. Adelman had knowledge earlier than that.

■ Defendants are correct, however, that the arbitrator's findings constitute relevant evidence in this court—a contention that plaintiffs do not dispute. The defendants have properly placed that opinion into the record, and arbitrators are impartial spectators charged with the duty of making a careful assessment of the facts. Accordingly, where the arbitrator has made a finding that is relevant to the case at bar, such a finding will not be conclusive in this forum, but it will be viewed as evidence entitled to considerable weight.

The arbitrator's award is most helpful to defendants insofar as the arbitrator found that Dr. Adelman negotiated the agreements with the assistance of counsel. The arbitrator found that, in 1991, "[t]he Partnership Agreement was a product of negotiations, he was advised by an attorney of his choice." [5] Similarly, with respect to the 1996 negotiations, the arbitrator states that "Dr. Adelman had access to a lawyer of his choice for counsel and advice." Plaintiffs do not contest the truth of these statements.

It is at the very limit of credibility that Dr. Adelman did not know the contents of the plans, when he had engaged in active negotiations over the agreement with the advice of counsel. These were not form contracts, but actively bargained-for agreements. The exclusion from the plans was part of that bargaining. The thought that an attorney assisting such negotiations would not call his client's attention to the contents of the plan is difficult to believe.

If Dr. Adelman did have such knowledge during any of the negotiations, then his claims are time-barred. As noted above, the 1996 agreement became effective on January 1, 1996, having been negotiated in December of 1995. Thus, his coming to know of the contents of the plans from the events surrounding that agreement would necessarily have occurred prior to January 8, 1996, one week after the effective date of the agreement. And because January 8, 1996 is the date before which he cannot have had actual knowledge in order for plaintiffs' action to be timely, such knowledge would necessarily cause his action to be untimely. And, of course, if he knew of the contents of the plan in 1991, his action would be barred on that basis as well. And because repeated violations of the same character do not start the clock running anew where there is "actual knowledge," *see Phillips v. Alaska Hotel and Restaurant Employees Pension Fund,* 944 F.2d 509 (9th Cir.1991), knowledge at any point would bar all claims.

■ As noted above, in light of the uncontested facts surrounding the formation of the agreements in 1991 and 1996, plaintiffs' claim that Dr. Adelman did not have knowledge of the plans' provisions is at the limits of credibility. But because the issue arises here in the context of a motion for summary judgment, the court is hesitant to make a finding that Dr. Adelman actually held such knowledge, given the absence of any direct evidence to that effect. It should be noted, however, that any arguable inequity that derives from the operation of the statute of limitations is significantly diminished by Dr. Adelman's substantial knowledge of most, if not all, of the factual bases for his claim long before the initiation of the present action.

5. Defendants have characterized the arbitrator's findings as including a similar finding with respect to the 1989 letter. This characterization is unsupported by the record.

**406**

## C. Fraud and Concealment.

Plaintiffs argue that, even if their causes of action accrued prior to the cut-off date, the action escapes bar by application of the "fraud or concealment exception." That exception provides that "when a lawsuit has been delayed because the defendant itself has taken steps to hide its breach of fiduciary duty," *Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544, 1552 (3d Cir.1996), "such action may be commenced not later than six years after the date of discovery of such breach or violation." 29 U.S.C. § 1113. Plaintiffs contend that Dr. Adelman was unaware of the contents of the plans because the defendants had kept that information from him by fraud and concealment.

There is, however, no basis in the record to so conclude. And, as discussed above, the record quite strongly points in the other direction. In other words, the record strongly supports the conclusion that Dr. Adelman actually knew of the contents of the plans. To establish fraud, plaintiffs would have to both negate that conclusion and provide evidence of actual fraud or concealment. But they have provided no substantial evidence of fraud or concealment. Because they have not done so, their fraud argument necessarily fails as a matter of law.

## D. Conclusion

As discussed in section A, *supra,* plaintiffs' action accrued no later than October 1, 1991. Because plaintiffs' claim that the operation of the statute of limitations is subject to the fraud exception fails as a matter of law, this action had to be filed no later than six years after that date. See 29 U.S.C. § 1113(1). The filing of this action on January 8, 1999, therefore, was more than six years after the accrual of plaintiffs' claims. It follows that plaintiffs' action is time barred under § 1113(1). Defendants' motion for summary judgment will, therefore, be granted. An appropriate order follows.