**William S. HARRIS, et al., Plaintiffs,**

**v.**

**James E. KOENIG, et. al., Defendants.**

**Civil Action No. 02–618 (GK).**

United States District Court,
District of Columbia.

June 10, 2010.

46

Bryan Taylor Veis, James Brian McTigue, James A. Moore, McTigue & Porter, Gregory Yann Porter, Bailey & Glasser, LLP, Washington, DC, Brian A. Glasser, Bailey & Glasser LLP, Charleston, WV, Ellen M. Doyle, Joel R. Hurt, John Stember, Pamina G. Ewing, Stember Feinstein Doyle Payne & Cordes, LLC, Pittsburgh, PA, for Plaintiffs.

Jonathan S. Quinn, Lisa A. Kellmeyer, Sarah R. Wolff, Sachnoff & Weaver, Ltd., Matthew R. Kipp, Richard L. Brusca, Skadden, Arps, Slate, Meagher & Flom

LLP, Wilber H. Boies, Kristen C. Klanow, McDermott, Will & Emery, Kristi Nelson, Freeman, Freeman & Salzman, P.C., Phillip L. Stern, Neal, Gerber & Eisenberg LLP, Francis J. Higgins, Peter G. Rush, Lawrence M. Gavin, Nicholas J. Etten, Bell, Boyd, Lloyd, LLC, Chicago, IL, Gary Steven Tell, Robert N. Eccles, Shannon M. Barrett, O'Melveny & Myers, L.L.P., Amanda M. Raines, Skadden, Arps, Slate, Meagher & Flom, LLP, Michael J. Schrier, K & L Gates LLP, Charles R. Work, Karla Lynn Palmer, McDermott, Will & Emery LLP, Washington, DC, Abby C. Johnston, Paul B. Salvaty, O'Melveny & Myers LLP, Los Angeles, CA, Michael C. Miller, Stuart L. Shapiro, Shapiro Forman Allen & Miller, New York, NY, Daniel A. Curto, Steven W. Kasten, McDermott Will & Emery, Boston, MA, for Defendants.

### MEMORANDUM OPINION

GLADYS KESSLER, District Judge.

Plaintiffs William S. Harris, Reginald E. Howard, and Peter M. Thornton, Sr. are former employees of Waste Management Holdings, Inc. ("Old Waste" or "the Company") and participants in the Waste Management Profit Sharing and Savings Plan ("Old Waste Plan" or "Plan"). They bring this action on behalf of the Plan's approximately 30,000 participants under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, against Defendants,[1] all of whom were fiduciaries of the Old Waste Plan or are fiduciaries of its successor plan, the Waste Management Retirement Savings Plan ("New Waste Plan").[2]

This matter is presently before the Court on Defendants' Motions to Dismiss Counts I–V, VII–IX, XIII, and XIV of the Substitute Fourth Amended Complaint [Dkt. Nos. 290, 291, and 294]. Upon consideration of the Motions, Opposition, Replies, and the entire record herein, and for the reasons set forth below, the Waste Defendants' Motion to Dismiss [Dkt. No. 294] is **denied,** the Individual Waste Defendants' Motion to Dismiss [Dkt. No. 291] is **denied in part and granted in part,** and Defendant State Street Bank & Trust Company's Motion to Dismiss [Dkt. No. 290] is **granted.**

### I. Background

This action arises from Old Waste's announcement on February 24, 1998 that it was restating several of its financial statements for periods between 1991 and 1997 and that, prior to 1992 and continuing through the first three quarters of 1997, it had materially overstated its reported income by $1.43 billion. That announcement led to the filing of a securities class action in the Northern District of Illinois, which settled on September 17, 1999 ("Illinois

---

1. Defendants include the "Old Waste Fiduciaries," which are Old Waste (the Plan's sponsor), the Waste Management, Inc. Profit Sharing and Savings Plan Investment Committee ("Old Waste Investment Committee"), the Waste Management, Inc. Profit Sharing and Savings Plan Administrative Committee ("Old Waste Administrative Committee"), the individual Trustee Members of the Committees, the Old Waste Board of Directors and its individual members, and fifteen unidentified fiduciaries; and the "New Waste Fiduciaries," which are the Waste Management Retirement Savings Plan ("New Waste Plan"), the Investment Committee of the Waste Management Retirement Savings Plan ("New Waste Investment Committee") and its individual Trustee Members, the State Street Bank and Trust Company ("State Street"), and fifteen unidentified fiduciaries.

2. On January 16, 1998, Old Waste and Waste Services, Inc., merged to become New Waste. On January 1, 1999, the Old Waste Plan was merged with the USA Waste Services, Inc. Employee's Savings Plan to become the Waste Management Retirement Savings Plan ("New Waste Plan").

Litigation"). Under the terms of the settlement, Old Waste and its agents were released from liability for any claims— including unknown claims—brought by members of the Illinois Settlement Class. In 1999, after Old Waste merged with Waste Services, Inc. to become New Waste, New Waste announced further after-tax charges and adjustments of $1.23 billion. The announcement led to the filing of other securities class action complaints against New Waste and certain of its officers and directors in the Southern District of Texas, which settled on April 29, 2002 ("Texas Litigation"). Both settlements included the Plan and its fiduciaries within the scope of the class.

On April 1, 2002, Plaintiffs filed the instant action in this Court, alleging ten counts of ERISA violations. The claims were divided into three periods. First, Plaintiffs alleged five ERISA violations related to the Plan's purchase of inflated shares of company stock in the first claim period between January 1, 1990 and February 24, 1998 (Counts I–V). Second, Plaintiffs alleged four ERISA violations related to the release of claims by the Plan's fiduciaries in the Illinois securities litigation in the second claim period between July 15, 1999 and December 1, 1999 (Counts VI–IX). Third, Plaintiffs alleged one ERISA violation in the third claim period between February 7, 2002 and July 15, 2002 related to the release of claims by the New Waste Plan's trustee—Defendant State Street Bank and Trust Company—in the Texas securities litigation (Count X).

After the filing of this action, Waste Management, Inc. filed a motion to enforce the Illinois settlement in the United States District Court for the Northern District of Illinois to prevent this action from moving forward. On March 11, 2003, Judge Wayne R. Andersen, who presided over the Illinois Litigation, denied the motion after finding that the earlier part of the class period in this Court's lawsuit "clearly fall[s] outside of the scope of the settlement language of the class action securities case." *In re Waste Mgmt., Inc. Sec. Litig.*, No. 97–C–7709, 2003 WL 1463585, at *2 (N.D.Ill.2003). Judge Andersen concluded that ruling on the merits of Defendants' motion to enjoin this action was not in the interest of judicial economy, as this Court would nevertheless be required to consider the period predating the Illinois Class Period.

On February 2, 2005, Plaintiffs filed their Third Amended Complaint in this action. On March 12, 2009, this Court dismissed Counts I–V as time-barred under ERISA § 413 because Plaintiffs had "actual knowledge of the breach or violation" more than three years before filing the original Complaint. *Harris v. Koenig*, 602 F.Supp.2d 39, 52 (D.D.C.2009) [Dkt. No. 218 at 26]. The Order also rejected Plaintiffs' argument that the three-year limitation should be tolled, finding that Defendants' failure to disclose material information was insufficient to establish fraud or concealment under ERISA. *Id.* at 52–53. In the Motion for Leave to File a Fourth Amended Complaint, Plaintiffs requested leave to amend their Complaint to include new facts which would establish acts of fraud or concealment by Defendants—namely, that certain Old Waste Plan fiduciaries "fraudulently misstated, or caused to be fraudulently misstated, material financial information contained in disclosures required by ERISA and the 1934 Act." Fourth Amended Complaint [Dkt. No. 240–2] at ¶ 79.

Plaintiffs separately moved for leave to file a Substitute Fourth Amended Complaint to add Counts XIII and XIV, which allege Defendant State Street's violation of ERISA § 406(b)(2) in the Illinois and Texas Litigations. Counts XIII and XIV

stem from Defendants' statement in their Opposition to Plaintiffs' Motion for Leave to File the Fourth Amended Complaint that Defendant State Street was released from all third period claims because it was acting as an "agent" of New Waste. Plaintiffs allege that such a principal-agent relationship conflicts with State Street's fiduciary obligations, and therefore State Street's participation in the Illinois and Texas Litigations constitutes prohibited self-dealing in violation of ERISA § 406(b), 29 U.S.C. § 1106(b).

On December 14, 2009, the Court granted Plaintiffs leave to amend the Complaint in order to re-assert Counts I–V and to add Counts XIII and XIV.[3] *Harris v. Koenig,* 673 F.Supp.2d 8, 12–15 (D.D.C.2009) [Dkt. No. 279]. The Court stated in its Opinion that it "defers ruling on the merits of Defendants' statute of limitations argument [made in opposing the Motions for Leave to File], which is better addressed in a motion to dismiss." *Id.* at 13.

Defendants accordingly filed three Motions to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6): (1) the Waste Defendants'[4] Motion to Dismiss Counts I–V and Counts VII–IX [Dkt. No. 294]; (2) the Individual Waste Management Defendants'[5] Motion to Dismiss Counts I–V [Dkt. No. 291]; and (3) Defendant State Street's Motion to Dismiss Counts XIII and XIV [Dkt. No. 292]. Counts VI and X were not challenged by any of the Defendants.

## II. Standard of Review

Under Rule 12(b)(1), the plaintiff bears the burden of proving by a preponderance of the evidence that the court has subject matter jurisdiction to hear the case. *See Jones v. Exec. Office of the President,* 167 F.Supp.2d 10, 13 (D.D.C.2001). In reviewing a motion to dismiss for lack of subject matter jurisdiction, the court must accept as true all of the factual allegations set forth in the complaint; however, such allegations "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wilbur v. CIA,* 273 F.Supp.2d 119, 122 (D.D.C.2003) (citations and quotations omitted). The court may consider matters outside the pleadings. *See Herbert v. Nat'l Acad. of Sciences,* 974 F.2d 192, 197 (D.C.Cir.1992). The court may also rest its decision on the court's own resolution of disputed facts. *Id.*

Under Rule 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [his or her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "[A] complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotations omitted) (citing

---

**3.** The Court denied Plaintiffs leave to add Counts XI and XII, which alleged additional ERISA violations in the third claim period, because of Plaintiffs' undue delay in bringing the claims. Nevertheless, the Substitute Fourth Amended Complaint filed by Plaintiffs on December 15, 2009 includes, word for word, the rejected Counts XI and XII [Dkt. No. 280]. Consequently, Counts XI and XII are **struck** for Plaintiffs' failure to obtain permission to file them.

**4.** These Defendants include Old Waste, the Old Waste Investment Committee, the Old Waste Administrative Committee, and the New Waste Investment Committee.

**5.** These Defendants include the individuals on Old Waste's Board of Directors, the Old Waste Investment Committee, the Old Waste Administrative Committee, the New Waste Investment Committee, and the executives who administered the Old Waste Plan.

*Twombly,* 550 U.S. at 557, 127 S.Ct. 1955). Instead, the complaint must plead facts that are more than "merely consistent with" a defendant's liability; "the pleaded factual content [must] allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1940.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly,* 550 U.S. at 563, 127 S.Ct. 1955. Under the standard set forth in *Twombly,* a "court deciding a motion to dismiss must ... assume all the allegations in the complaint are true (even if doubtful in fact) ... [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.,* 525 F.3d 8, 18 (D.C.Cir.2008) (internal quotations marks and citations omitted); *see also Tooley v. Napolitano,* 586 F.3d 1006, 1007 (D.C.Cir.2009) (declining to reject or address the government's argument that *Iqbal* invalidated *Aktieselskabet* ).

## III. Analysis

The Waste Defendants make four arguments in support of their Motion to Dismiss Counts I–V and Counts VII–IX. First, they argue that Counts I–V and VII–IX are barred by *res judicata,* since these counts "involve the same claims and parties as the class action settlement approved by the U.S. District Court for the Northern District of Illinois." Waste Defs.' Mot. at 2. Second, the Waste Defendants argue that Counts I–V and VII–IX are barred by the release entered as part of the settlement of the Illinois Litigation. Third, the Waste Defendants argue that Counts I–V are barred by the statute of limitations found in ERISA § 413, 29 U.S.C. § 1113. Fourth, the Waste Defen-

dants argue that Counts VII and IX against Old Waste should be dismissed because it was neither a fiduciary nor a non-fiduciary party in interest subject to liability under ERISA during the period in which the claims arose.

The Individual Waste Defendants join the other Waste Defendants in arguing that *res judicata,* the release from the Illinois Litigation, and the statute of limitations bar Counts I–V. In addition, the Individual Waste Defendants argue that several individuals named as Defendants should be dismissed from this action because they were never served with the Complaint.

Finally, Defendant State Street argues that Counts XIII and XIV should be dismissed under Fed.R.Civ.P. 12(b)(6) because they are barred by the statute of limitations in ERISA § 413.

### A. Counts I–V

The Waste Defendants and the Individual Waste Defendants have moved to dismiss Counts I–V on the grounds of *res judicata,* contractual release, and the statute of limitations in ERISA § 413. Counts I–V all allege ERISA violations related to the Plan's purchase of inflated shares of company stock in the first claim period between January 1, 1990 and February 24, 1998.

In Counts I, II, and IV, Plaintiffs claim that the Old Waste Investment Committee and its individual Trustee Members breached their fiduciary duties of loyalty and prudence under ERISA Section 404, 29 U.S.C. § 1104, by:

● **Count I**

1. Failing to conduct an adequate fiduciary review to determine whether the Stock Fund was a prudent investment;

2. Causing the Old Waste Plan to maintain the Stock Fund as a Plan investment when they knew the unit shares were inflated in value and not a prudent investment;

3. Causing the Old Waste Plan to make new investments in unit shares of the Stock Fund when they knew the unit shares were inflated in value and not a prudent investment; and

4. Failing to take steps to prevent losses in the Stock Fund resulting from the investment of Plan participants' contributions to the Stock Fund.

● **Count II**

1. Failing to adequately inform Plan participants of the true risks of investing in the Stock Fund;

2. Conveying inaccurate information about the risks associated with investing in the Stock Fund;

3. Concealing from Plan participants facts regarding Old Waste's true financial condition; and

4. Failing to disclose to Plan participants that purchases of unit shares in the Stock Fund and of Company Stock by the Stock Fund were at inflated prices.

● **Count IV**

1. Failing to adequately monitor the performance of the Old Waste Committees;

2. Failing to prevent the Old Waste Investment Committee from offering the Stock Fund as an investment option when it or its members knew or should have known that it was not a prudent investment because Old Waste's financial statements did not report Old Waste's true financial condition;

3. Failing to prevent the Old Waste Plan from engaging in prohibited transactions under ERISA involving Company Stock and unit shares of the Stock Fund; and

4. Failing to provide the individual Trustee Members of the Old Waste Committees with accurate information regarding Old Waste's accounting irregularities.

Plaintiffs further allege in Count III that, to the extent Old Waste, the Old Waste Committees, and their individual Trustee Members contributed shares of Company Stock to the Old Waste Plan which were artificially inflated in value, the Plan acquired such shares for more than fair market value. As a result, such contributions constituted prohibited exchanges of stock between the Plan and Old Waste, a party in interest with respect to the Plan, in violation of ERISA Section 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A).

Finally, in Count V, Plaintiffs contend that the Old Waste Fiduciaries further breached their obligations under ERISA Sections 405(a)(2) and (3), 29 U.S.C. §§ 1105(a)(2) and (3), by enabling their co-fiduciaries to commit violations of ERISA as described in Counts I–IV and, with knowledge of such breaches, failing to make reasonable efforts to remedy them.

### 1. Res Judicata

■ Defendants argue that Counts I–V are barred by *res judicata* because the same nucleus of underlying facts—the sale of Old Waste common stock at artificially inflated prices—formed the basis of the claims in the Illinois Litigation. *Res judicata* applies when "there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final valid judgment on the merits, (4) by a court of competent jurisdiction." *Natural Res. Def. Council v. Envtl. Prot. Agency*, 513 F.3d 257, 260 (D.C.Cir.2008).

■ Plaintiffs deny that the first two requirements—identity of claims and privity among parties—are met. In determining whether claims are identical for *res judicata* purposes, the analysis "turns on whether the [two claims] share the same nucleus of facts." *Natural Res. Def. Council*, 513 F.3d at 261. The court considers " 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.' " *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 949 n. 5 (D.C.Cir.1983) (quoting 1B J. Moore, Moore's Federal Practice ¶ 0.410[1] (2d ed. 1983)).

■ Although no ERISA claims were raised in the Illinois Litigation, "the parties to a suit and their privies are bound by a final judgment and may not relitigate any ground for relief which they already have had an opportunity to litigate—even if they chose not to exploit that opportunity ...." *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C.Cir.1981). In determining privity, a person not named as a party to a class action may be bound by a judgment on the merits of the action only "if she was adequately represented by a party who actively participated in the litigation."

*Taylor v. Sturgell*, 553 U.S. 880, 884, 128 S.Ct. 2161, 2167, 171 L.Ed.2d 155 (2008).

■ The Court concludes, for the following reasons, that Counts IV are not barred by *res judicata*. First, although the two sets of claims are obviously similar, they differ in significant ways. The ERISA action alleges a longer Class Period than that alleged by the Illinois plaintiffs in their securities case: the ERISA action's Class Period dates back to January 1, 1990, while the Illinois Litigation's Class Period dated back only to November 3, 1994.

Second, the ERISA claims in Counts I–V raise different factual issues than the securities claims in the Illinois Litigation. The focus of this lawsuit is on Defendants' conduct, as fiduciaries of the Old Waste Plan, in continuing to offer Old Waste Company Stock as an investment option when they allegedly knew it was overvalued. In contrast, the Illinois Litigation focused on Defendants' conduct in providing misleading information to the public in violation of the securities laws. Because of this difference, only four of the twenty-seven Defendants named in this ERISA action were also named as defendants in the Illinois Litigation. In addition, the damages sought in Counts I–V of this action may differ from the damages recovered in the Illinois Litigation.[6] *See, e.g.,*

---

6. As Defendants point out, Judge Andersen, who presided over the Illinois Litigation, expressed reservations about the viability of this suit's damages claims when he rejected Defendants' motion to enjoin this action: "[b]ecause the approval of the settlement in the [Illinois Litigation] established with finality fair compensation for the plaintiff shareholders, the beneficiaries of the plan are estopped from seeking additional damages related to the value of the stock for the time period covered by this lawsuit." *In re Waste Mgmt., Inc. Sec. Litig.*, No. 97–C–7709, 2003 WL 1463585, at *2 (N.D.Ill.2003).

The damages suffered by the ERISA Plan and its participants might be found to be co-extensive with the damages attributable to the artificially inflated prices of the shares purchased, and thus fully compensated for in the Illinois Litigation. However, at least one case has suggested that damages in securities and ERISA actions differ: "Defendants claim ERISA allows plaintiffs to recover the gains they would have realized if the funds invested in [company] stock had been invested in an alternate and allegedly more prudent security, while damages under the securities laws are determined by largely statutory means." *In re Elec. Data Sys. Corp. Sec. Litig.*, 226 F.R.D. 559, 568 n. 8 (E.D.Tex.2005). At this stage, then, there is at least both a legal and a

*Capitol Hill Group v. Pillsbury, Winthrop Shaw, Pittman, LLC,* 569 F.3d 485, 490 (D.C.Cir.2009) (describing "nucleus of facts" test for determining identity of claims).

Third, and most importantly, the adequacy of representation in the Illinois Litigation is hotly contested. Because the named plaintiffs in the Illinois Litigation, who were shareholders of Old Waste, were not participants in the Old Waste Plan, they could not, and did not, assert any claims under ERISA. *See East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (holding that the representative parties in a class action are limited to the claims they possess in common with other members of the class).

Thus, even if the Old Waste Plan—on whose behalf Plaintiffs bring Counts I–V in this action—actively participated in the settlement and received compensation for the loss of value of Old Waste stock, it could not have brought its ERISA claims in the Illinois class action. "[W]hen a ground of recovery or defense could not have been asserted in the prior action between the parties ... the defense or ground of recovery falls outside the scope of claim preclusion." *Littlejohn v. United States,* 321 F.3d 915, 919 (9th Cir.2003); *accord Nixon v. United States,* 978 F.2d 1269, 1298 (D.C.Cir.1992) (no *res judicata* when plaintiff's first litigation did not provide him with a full and fair opportunity to litigate the claim); *United States Industries, Inc. v. Blake Const. Co., Inc.,* 765 F.2d 195, 205 n. 21 (D.C.Cir.1985) ("[N]othing in the rule against splitting a cause of action prevents a plaintiff from later bringing claims that either could not have been anticipated when the first suit was filed or would have been utterly impracticable to join at that time."). Be-

cause Plaintiffs had no "full and fair opportunity to litigate" their ERISA claims in the Illinois Litigation, Counts I–V are not precluded by *res judicata. Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979). Thus, the Motions to Dismiss Counts I–V on the ground of *res judicata* are **denied.**

### 2. Contractual Release

A separate issue, however, is whether Counts I–V are precluded by the release entered as part of the settlement in the Illinois Litigation. The "Released Parties" include Old Waste Management and "all of its predecessors and present and former parents, subsidiaries, affiliates, directors, officers, employees, agents, attorneys, advisors, and representatives." The "Released Claims" include:

[E]ach and every claim or cause of action, whether arising under any state, federal, or foreign statutory or common law or rule, that has been, or might have been, or could be asserted against any of the Released Parties ... arising out of or related, directly or indirectly, to the open-market purchase, acquisition, or sale of any of the Subject Securities during the Class Period in actual, direct, indirect, constructive, or implied reliance upon or at a price allegedly affected by (i) any financial statements, press releases, public filings, or other public disclosures made or issued by WMX ..., or for which any of the Released Parties is allegedly responsible; (ii) any opinion issued by or communications from [the auditor, its predecessors or affiliates] with respect to any such financial statements, press releases, public filings, or other public disclosures; and/or (iii) any alleged act, misrepresentation or omission occurring on or before February 24, 1998 regarding the financial condition,

---

factual dispute as to the scope of damages

applicable to Counts I–V.

results of operations, financial statements, press releases, public filings, or other public disclosures of WMX. *In re Waste Mgmt., Inc. Sec. Litig.,* No. 97–C–7709 (N.D.Ill. Sept.17, 1999) (unpublished opinion entering final judgment and order of dismissal).

■ Plaintiffs argue that, at this stage, just as the Court found in its March 12, 2009 Opinion, " '[t]here are at the very least factual disputes as to whether Plaintiffs and the other Plan participants were represented adequately by either the lead plaintiffs or the Plan fiduciaries and received adequate notice that valuable ERISA claims were being released in the Illinois settlement.' " 602 F.Supp.2d at 54 (citing Pls.' Opp'n to Defs.' Omnibus Mot. at 49). The Court also found in that Opinion that there were factual and legal disputes as to whether the terms of the release applied to Plaintiffs' ERISA claims at all. *Id.* As a result, the Court concluded that Defendants could not argue that Plaintiffs' claims were released in the Illinois Litigation until a full record had been made. *Id.* Defendants have offered no compelling arguments to change this conclusion.[7]

Plaintiffs also argue that factual disputes remain as to the enforceability of the release: if the Plan's entry into the release was a prohibited transaction under ERISA, as alleged in Count VII, the release is ineffective. Opp'n at 45–49. Defendants respond that Plaintiffs cannot simultaneously argue that (1) the ERISA claims in Counts I–V are not subject to the terms of the release because it is ineffective; and (2) the release of the ERISA claims in the Illinois Litigation was a prohibited exchange of securities and stock in action under § 406(a)(1)(A). Instead, Defendants urge this Court to determine whether the release encompasses Counts I–V, and thus whether those Counts remain in this action. *See Lindell v. Landis Corp. 401(k) Plan,* 640 F.Supp.2d 11 (D.D.C.2009) (engaging in similar analysis on motion to dismiss, but legitimacy of settlement agreement was not in dispute).

■ However, Fed.R.Civ.P. 8(d)(3) permits plaintiffs to plead inconsistent claims in support of alternative theories of recovery. *See* Fed.R.Civ.P. 8(d)(3)(2009) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). While the pleadings must comply with Fed.R.Civ.P. 11, if a plaintiff is legitimately in doubt as to what the evidence will show, she may assert inconsistent facts in the complaint. Fed.R.Civ.P. 8, 11 (2009); *American Int'l Adjustment Co. v. Galvin,* 86 F.3d 1455, 1461 (7th Cir.1996).

Because factual and legal disputes regarding the Release's applicability and enforceability remain, Plaintiffs may legitimately doubt whether Counts I–V were released in the Illinois Litigation. Thus, the Motions to Dismiss Counts I–V on the ground of contractual release are **denied.** Once a fuller record has been developed that would enable the Court to decide whether the release applies to Counts I–V, Defendants are free to raise anew their contractual release argument.

### 3. Statute of Limitations

Defendants next argue that Counts I–V are barred by the statute of limitations in

---

**7.** Defendants argue that the Court's reasoning in the March 12, 2009 Order regarding the need for a fuller record is distinguishable because at that time the Court was addressing Defendants' argument that the second period claims were an improper collateral attack on the fairness and adequacy of the Illinois settlement. Here, in contrast, Defendants' argument is that the first period claims (Counts I–V) are barred by the Release. However, there is no reason why the Court's findings as to what factual disputes remain should differ from one context to another.

ERISA § 413, 29 U.S.C. § 1113. In its March 12, 2009 Opinion, the Court found that Plaintiffs had "actual knowledge" of Counts I–V by February 24, 1998 and had failed to sufficiently plead fraud or concealment. 602 F.Supp.2d at 51–53. Consequently, Counts I–V were dismissed as time-barred under ERISA § 413(2).

Section 413 states that:

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

In their Substitute Fourth Amended Complaint, Plaintiffs added facts alleging Defendants' active concealment of their fiduciary breaches in order to invoke the six-year fraud or concealment provision in § 413. Defendants first argue that Plaintiffs misinterpret the fraud or concealment provision to permit tolling of the three-year limitation period in § 413(2). In the alternative, Defendants argue that Plaintiffs have failed to plead sufficient facts to show fraud or concealment.

### a. Fraud or Concealment Provision of § 413

Defendants first argue that the exception for cases of fraud or concealment ap-plies to the six-year statute of limitations in § 413(1), but not to the three-year statute of limitations in § 413(2). Defendants rest their argument on the distinction between "actual knowledge" in § 413(2) and "date of discovery" in the fraud or concealment provision.

"Actual knowledge" means knowledge of all material facts necessary to understand that some claim exists, while "date of discovery" means the date that a plaintiff, in the exercise of reasonable diligence, discovered or should have discovered the breach or violation. *See Gluck v. Unisys Corp.,* 960 F.2d 1168, 1177 (3d Cir.1992) (actual knowledge); *Kurz v. Philadelphia Elec. Co.,* 96 F.3d 1544, 1552 (3d Cir.1996) (date of discovery). Because the concepts differ, Defendants argue that § 413(2) and the fraud or concealment exception must be read to operate separately.

Specifically, under Defendants' interpretation of § 413, when a plaintiff both discovers and gains actual knowledge of the underlying claim after a defendant's fraud or concealment, both the three-year limitation in § 413(2) and the six-year fraud or concealment provision apply. Because § 413 directs that the earlier of the deadlines in (1) and (2) applies, Defendants contend that the earlier three-year statute of limitations should similarly trump the six-year period in the fraud or concealment provision.

Defendants argue that their interpretation is supported by the doctrine of fraudulent concealment, a common law rule that tolls the running of statutes of limitation when defendants engage in a course of conduct designed to conceal evidence of their alleged wrong-doing. It is correct that in *Larson v. Northrop Corp.,* 21 F.3d 1164 (D.C.Cir.1994), our Court of Appeals concluded that § 413's fraud or concealment provision incorporates the doctrine of

fraudulent concealment. However, the Court of Appeals has also ruled that the doctrine does not apply when a plaintiff had actual or constructive notice of the evidence of defendants' wrongdoing. *See Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1490 (D.C.Cir.1989). Defendants therefore conclude that § 413's fraud or concealment provision cannot logically toll § 413(2)'s three-year statute of limitations for plaintiffs with actual knowledge, since the common law doctrine would not apply in that case. Under Defendants' view, § 413's fraud or concealment provision not only incorporates the common law fraudulent concealment doctrine, but also works in precisely the same way: namely, to simply toll the running of a separately established statute of limitations.

■ Plaintiffs have a very different view, however, of how § 413 must be interpreted. They argue that the fraud or concealment provision does more than toll the statutes of limitations set forth in §§ 413(1) and (2); instead, it also creates a separate six-year statute of limitations when defendants actively conceal evidence of their wrongdoing. Under Plaintiffs' view, this separate six-year statute of limitations applies in cases of fraud or concealment, even if a plaintiff later gains actual knowledge. The Court concludes that Plaintiffs have the more persuasive position.

First, the "interpretive task" of parsing § 413 must always begin with its exact language. *United States v. Villanueva-Sotelo* 515 F.3d 1234, 1237 (D.C.Cir.2008) (citing *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002)). Defendants' interpretation is inconsistent with the plain meaning of § 413—the statute is constructed so that the exception for fraud or concealment applies to both sections (1) and (2), not merely section (1) as Defendants argue.

If Congress intended to limit its effect to section (1), it could have easily done so by placing the provision within that section alone. Further, even if the definitions of "actual knowledge" and "date of discovery" differ, the date of discovery will often be the date that actual knowledge is gained. Reading § 413(2) and the six-year fraud or concealment provision as operating separately would, in effect, read the fraud or concealment provision out of the statute in the typical case where the date of discovery and date of actual knowledge coincide. *Cf. Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (courts must "give effect ... to every clause and word of [the] statute").

Second, the caselaw in this Circuit supports Plaintiffs' interpretation. Our Court of Appeals has described § 413 as setting forth a separate statute of limitations in cases of fraud or concealment:

> In short, the basic ERISA limitation period of six years runs from the date of the breach or violation, except in case of fraud or concealment, when it runs from the date of discovery of the breach or violation. *If there is no fraud or concealment,* the six year period can be reduced to three years if the defendant can show that the plaintiff had either actual or constructive knowledge of the breach or violation....

*Fink v. Nat'l Savings & Trust Co.*, 772 F.2d 951, 957 (D.C.Cir.1985) (emphasis added). In addition, Plaintiffs' view has been adopted in explicit terms by at least one unreported opinion from this District Court:

> Essentially, there are two statute [sic] of limitations for ERISA claims. First, there is a general six-year statute of limitations imposed unless the defendants show that the plaintiff had actual knowledge of the violation. If the plaintiff had actual knowledge, there is a

three-year statute of limitations period. Second, if the plaintiff can show "fraud or concealment" there is a six-year statute of limitations period that begins on the date of discovery of the breach or violation.

*Larson v. Northrop Corp.,*[8] Civ. No. 88–899, 1992 WL 249790, at \*3 (D.D.C.1992), *aff'd on different grounds,* 21 F.3d 1164 (D.C.Cir.1994).[9]

In response, Defendants rely heavily on a single phrase in *Walker v. Pharm. Research and Mfrs. of America,* 461 F.Supp.2d 52 (D.D.C.2006), that appears to support their interpretation of § 413: "[b]ecause the plaintiff had actual knowledge of the alleged breach in 1991, the court need not consider the plaintiff's argument that the doctrine of fraudulent concealment tolls the statute of limitations." However, in *Walker,* the plaintiff alleged that the defendants engaged in acts of fraud or concealment which prevented her from gaining actual knowledge of her ERISA § 404 claim until September or November 2001, approximately three years before she filed suit. *Id.* at 59. The court rejected that argument and found that, to the contrary, she gained actual knowledge of her claim in 1991. Because she had actual knowledge in 1991, the Court concluded that, under the doctrine of fraudulent concealment, the plaintiff's allegations of subsequent acts of fraud or concealment in the 1990s could not equitably toll the statute of limitations. *Id.* at 59–60.

Here, in contrast, Defendants' alleged acts of fraud or concealment occurred before Plaintiffs gained actual knowledge in February 1998. The only issue raised in this case, then, is whether—assuming Plaintiffs have sufficiently pled fraud or concealment for the period leading up to 1998—a three-year or six-year statute of limitations began to run once Plaintiffs gained actual knowledge of the claim.

For all these reasons, the Court concludes that § 413's fraud or concealment provision sets forth a separate six-year statute of limitations that applies to both § 413(1) and § 413(2). Thus, Counts I–V are not time-barred if Plaintiffs have sufficiently pled fraud or concealment under § 413.

### b. Failure to Plead Fraud or Concealment Under § 413

■■■ Defendants argue in the alternative that Plaintiffs have failed to adequately plead fraud or concealment under § 413. To invoke § 413's fraud or concealment provision, it is not enough that the claim be one of substantive fraud; instead, "the fraudulent concealment doctrine ... requires that the defendant engage in active concealment—it must undertake some 'trick or contrivance' to 'exclude suspicion and prevent inquiry.' Such concealment must rise to something 'more than merely a failure to disclose.'" *Larson,* 21 F.3d at 1174 (quoting *Schaefer v. Arkansas Med. Soc'y and Tr. of the Arkansas Med. Soc'y Pension Trust,* 853 F.2d 1487, 1491 (8th Cir.1988) (internal citation omitted)).

---

**8.** This is the District Court opinion affirmed by the Court of Appeals in *Larson,* 21 F.3d 1164, although on different grounds than the District Court relied upon.

**9.** Plaintiffs also rely on the Second Circuit's decision in *Caputo v. Pfizer,* 267 F.3d 181, 189 (2d Cir.2001), which explicitly held that the fraud or concealment provision in § 413 sets forth a separate statute of limitations. How-

ever, this conclusion led the Second Circuit to the separate conclusion that—contrary to this Circuit's law—the provision does not incorporate the common law fraudulent concealment doctrine. *Id.* The Second Circuit's interpretation of § 413 is therefore somewhat inconsistent with this Circuit's precedent, which, of course, is binding on this Court.

The Substitute Fourth Amended Complaint adds factual allegations that Defendants actively concealed their wrongdoing during the first claim period. *See* Substitute 4th Am. Compl. ¶¶ 79–105. Specifically, Plaintiffs allege that Defendants Koenig and Tobecksen fraudulently misstated, or caused to be fraudulently misstated, material financial information required under ERISA §§ 103(a) and 104(a) to be reported annually to the Department of Labor ("DOL"). In addition, Plaintiffs allege that the Old Waste Plan fiduciaries filed an Annual Report on Form 11–K with the Securities and Exchange Commission ("SEC") for each of the fiscal years from 1990–1996 which included the Plan's audited (but false) financial statements.

Plaintiffs also allege that Defendants intentionally misled Arthur Andersen—the auditor of Old Waste's financial statements and of the Plan—as to the value of the stock by giving it inaccurate management representation letters ("MRLs"). As a result of receiving these inaccurate MRLs, Arthur Andersen then submitted an "unqualified opinion" to the DOL that concealed the accounting irregularities.[10] Finally, Plaintiffs allege that Defendant Old Waste Administrative Committee and its individual members delivered account statements—as required under ERISA—to Plan participants that misstated the true value of the Old Waste stock held by the Plan. All of these acts were allegedly done in order to prevent the Department of Labor, the SEC, and Plan participants from becoming aware of the underlying securities fraud and ERISA violations.

Defendants first respond that the filings in question are routine acts required of every public company. Thus, they are not acts designed to conceal underlying misconduct but necessary "parts of the Company's day-to-day activities." Ind. Defs.' Mot. at 10. However, Defendants fail to explain how filings which are required under federal law for the very purpose of ensuring compliance with the securities laws and ERISA could be viewed as so "routine" that the knowing inclusion of false information could never rise to the level of fraud or concealment under § 413.

Second, Defendants rely on this Court's rejection of similar allegations of fraud or concealment in its March 12, 2009 Order. 602 F.Supp.2d at 52–53. In their Opposition to Defendants' Motion to Dismiss the Third Amended Complaint, Plaintiffs alleged that Defendants affirmatively misrepresented the true value of the Stock Fund investments to participants each time they provided an account statement. The Court found this allegation insufficient in part "[b]ecause the Company initiated an investigation of the alleged 'accounting irregularities' and then, on February 24, 1998, publicly announced its restatement of prior period earnings and its reasons for the restatement[. Thus,] Plaintiffs have no basis to suggest that Plan fiduciaries 'took affirmative steps to hide [their] breach[es]' until the limitations period had run." *Id.* at 53.

However, the acts alleged in the Substitute Fourth Amended Complaint occurred between 1990 and 1996, many years before Defendants first indicated, in a press release dated October 10, 1997, that there were accounting irregularities. Thus, the Court now concludes, on the basis of the

10. Had Arthur Andersen submitted a "qualified opinion", Plaintiffs allege that "the DOL would have rejected the filing of the Plan's Form 5500 pursuant to ERISA § 104(a)(4)(B), 29 U.S.C. § 1024(a)(4)(B), thereby raising questions concerning the management and administration of the Plan, the value of its assets, and the appropriateness of future purchases of Old Waste stock.... Accordingly, the Defendants took steps to mislead Andersen in its audit of the Plan's financial statements." Substitute 4th Am. Compl. ¶ 90.

Substitute Fourth Amended Complaint, that Defendants' subsequent steps to investigate and disclose the accounting irregularities do not defeat Plaintiffs' allegations of fraud.

Defendants' final argument, that Plaintiffs have failed to plead actual concealment, or any trick designed to conceal the underlying wrong other than the underlying wrong itself, gives the Court greater pause. Defendants are correct that most of Plaintiffs' allegations concerning Defendants' filings with the SEC merely restate the underlying wrong, i.e. Defendants' failure to fairly value the Plan's assets. *See* ¶¶ 87–88. As such, they fail to qualify as acts of concealment under § 413. *Larson,* 21 F.3d at 1173 ("[R]egardless of whether the acts to conceal the breach occur in the course of the conduct that constitutes the underlying breach or independent of and subsequent to the breach, there must be actual concealment-i.e., some trick or contrivance intended to exclude suspicion and prevent inquiry.") (internal quotations and citations omitted).

■ However, the allegation that Defendants purposefully misled Andersen by submitting fraudulent MRLs, which resulted in inaccurate filings with the DOL, are very different. According to the Substitute Fourth Amended Complaint, Defendants Koenig and Tobecksen stated in their letters submitted to Andersen that they "[had] made available to [Andersen] all financial records and data," that "[t]here have been no ... irregularities involving management or employees who have significant roles in the internal control structure [or] ... involving other employees that could have a material effect on the financial statements," that [they] had] no plans or intentions that may materially affect the carrying value or classification of assets and liabilities," that "[t]here are no ... [v]iolations or possible violations of law or regulations whose effects should be considered for disclosure in the financial statements or as a basis for recording a loss contingency," and that "[t]he accounting records underlying the financial statements accurately and fairly reflect, in reasonable detail, the transactions of the plans." *Id.* ¶ 92.

Plaintiffs additionally allege that these statements were known by Defendants Koenig and Tobecksen to be false because they:

Had failed to provide financial records and data reflecting the overvaluation of Old Waste stock held in the Plan; [w]ere aware, as 'management' of the Plan, of the overvaluation of the Old Waste stock held in the Plan; [w]ere aware that the overvaluation of the Old Waste stock held in the Plan could have a material effect on the financial statements of the Plan; ... [w]ere aware of their own conduct, and the conduct of Defendants Buntrock, Rooney, and Getz in violation of law or regulations, which should have been considered for disclosure in the financial statements or as a basis for recording a loss contingency with respect to the value of Old Waste stock held in the Plan; [k]new that the overvaluation of the Old Waste Stock held in the Plan constituted a loss contingency that was required to be accrued or disclosed by SFAS No. 5; and [k]new that the accounting records underlying the financial statements did not 'accurately and fairly reflect, in reasonable detail, the transactions of the plans' in that the transactions of the Plan included the purchase of shares of Old Waste stock at inflated prices.

*Id.* ¶ 93.

These allegations about Defendants' knowing submission of inaccurate MRLs to Arthur Andersen do not merely restate the underlying ERISA violations alleged in

Counts I–V. Instead, they sufficiently allege that Defendants knowingly engaged in active concealment, separate from the underlying breaches of fiduciary duty, to prevent Plan participants and beneficiaries from discovering ERISA claims. Thus, the six-year statute of limitations applies to the first period claims, Counts I–V are not time-barred, and the Motions to Dismiss Counts I–V are **denied.**

### c. Failure to Plead Fraud with Sufficient Particularity Under Rule 9(b)

Defendants also argue that Plaintiffs have failed to adequately plead fraud or concealment under Fed.R.Civ.P. 9(b). Rule 9(b) requires a plaintiff to assert specific facts that will support any accusation of fraud. It does not permit "wholly conclusory" allegations or contentions that defendants knew or should have known facts allegedly misrepresented or undisclosed. *Harris v. Koenig,* 602 F.Supp.2d at 53.

After Plaintiffs' original allegations of fraud in their Third Amended Complaint were found to be insufficient under Rule 9(b) in the March 12, 2009 Memorandum Opinion, they were granted leave to file a Substitute Fourth Amended Complaint because the Court "[was] satisfied that Plaintiffs have stated the circumstances constituting fraud—namely, the fraudulent misstatements made by Plan fiduciaries in public filings—in the Substitute Fourth Amended Complaint with sufficient particularity to satisfy Rule 9(b)." 673 F.Supp.2d at 12–13. Plaintiffs specified in their Substitute Fourth Amended Complaint which filings contained the alleged frauds, what misrepresentations were made in the filings, and how Defendants benefitted. Thus, the Court remains satisfied that Plaintiffs have satisfied Rule 9(b). *In re Newbridge Networks Sec. Litig.,* 767 F.Supp. 275, 282 (D.D.C.1991)

("[C]ourts require that a complaint specify what statements were made in what documents or in what context, the time and place of such statements, who made the statements, the manner in which the statements were misleading, and what the defendants obtained as a consequence of the statements.").

### d. Imputation of Fraud or Concealment to Individual Defendants

Finally, the Individual Defendants argue that since Plaintiffs' allegations address only Defendants Koenig's and Tobecksen's purported acts of fraud or concealment, the statute of limitations is not tolled as to the other Individual Defendants. Plaintiffs respond that § 413's fraud or concealment provision sets forth the time limit for an "action" in cases of fraud or concealment; it includes no requirement that each individually named Defendant have participated in the fraud or concealment. Second, Plaintiffs argue that, as a matter of public policy, co-fiduciaries should not be permitted to benefit from fraud or concealment, especially when ERISA includes provisions requiring fiduciaries to monitor their co-fiduciaries' performance.

Plaintiffs cite two cases—*Riddell,* 866 F.2d at 1493–94, and *Richards v. Mileski,* 662 F.2d 65 (D.C.Cir.1981)—where the court tolled a statute of limitations as to all defendants based on the actions of a few. The court in *Riddell,* however, explicitly based its reasoning on the fact that a civil conspiracy among the various defendants had been alleged. Because the acts of fraud or concealment were imputed to the conspiracy, they tolled the statute of limitations as to all co-conspirators. In *Mileski,* the court tolled the statute of limitations for all defendants based on affirmative misrepresentations made by two of them, but the case involved a former federal employee bringing *Bivens* claims

against six former federal officials. ERISA § 413 was not in issue. Thus, neither *Riddell* nor *Mileski* are applicable to the facts of this case.

 In contrast, Defendants cite to several ERISA cases establishing that the fraudulent concealment doctrine, which grew out of equitable estoppel, tolls the statute of limitations in § 413 only as to those defendants alleged to have committed the concealment. *See Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1401–02 (9th Cir.1995); *Greenwald v. Manko*, 840 F.Supp. 198, 203 (E.D.N.Y.1993). The Court therefore concludes that the statute of limitations is not tolled as to those Individual Defendants not alleged to have participated in the acts of fraud or concealment, including H. Jesse Arnelle, J. Steven Bergerson, Dean L. Buntrock, Jerry E. Dempsey, Dr. James Edwards, Donald F. Flynn, Herbert A. Getz, Roderick M. Hills, Joseph M. Holsten, Peter H. Huizenga, William P. Hulligan, Edward C. Kalebich, John J. Machota, Robert S. Miller, Peer Pedersen, James R. Peterson, John C. Pope, and Phillip B. Rooney. The Motion to Dismiss Counts I–V as to these Individual Defendants is therefore **granted.**

### B. Counts VII–IX

Counts VII–IX include Plaintiffs' second period claims against the Waste Defendants. These claims allege that the Waste Defendants violated ERISA §§ 404, 405, and 406 when they (1) caused the New Waste Plan to release claims in the Illinois Litigation; (2) failed to adequately monitor the performance of State Street in connection with the decision that the New Waste Plan would participate in the Illinois Litigation; and (3) enabled co-fiduciaries to commit these violations in the second claims period. The Waste Defendants argue that Counts VII–IX should be dismissed as against all Defendants because

they were contractually released in the Illinois Litigation and/or because they are precluded by principles of *res judicata,* and that Counts VII and IX should be dismissed as against Old Waste because it had no fiduciary status under ERISA in the second claim period.

#### 1. Release

For the reasons described above with regards to Counts I–V, factual disputes remain as to whether the Release entered into in settling the Illinois Litigation applies to Plaintiffs' ERISA claims. Thus, the Waste Defendants' argument that the Release bars Plaintiffs' second period claims is rejected at this stage of the litigation and their Motion to Dismiss on this ground is **denied.**

#### 2. Res Judicata

The Waste Defendants next argue that Plaintiffs' second period claims against them (Counts VII–IX), which challenge their conduct in settling the Illinois Litigation, are precluded under principles of *res judicata.* Specifically, Defendants argue that the second period claims are based on the same facts as those underlying the settled Illinois Litigation because—by Plaintiffs' own admission—they depend upon a showing that there were, in fact, viable claims of imprudent investment management raised in the Illinois Litigation.

 Defendants' argument is unpersuasive. *Res judicata* does not preclude claims when they are based on material facts not in existence when the first suit was brought. *Drake v. Fed. Aviation Admin.*, 291 F.3d 59, 66 (D.C.Cir.2002). When the Illinois Litigation was first brought, Plaintiffs obviously could not have brought Counts VII–IX against Defendants for improper settlement conduct, since the case had not yet settled. Consequently, Counts VII–IX are not barred by

*res judicata,* and Defendants' Motion to Dismiss on this ground is **denied.**

### 3. Old Waste's ERISA Liability in the Second Claim Period

Finally, the Waste Defendants argue that Counts VII and IX, the only second period claims in which Old Waste is named as a Defendant, must fail. They contend that Old Waste was neither a fiduciary nor a non-fiduciary party in interest subject to ERISA liability during this period because it had merged with a subsidiary of USA Waste Services, Inc. by the time of the Illinois Settlement.

■ First, the Substitute Fourth Amended Complaint asserts at least enough facts to give rise to a factual dispute over whether Old Waste was a party in interest during the Illinois Litigation. *See Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238, 251, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000) (permitting equitable recovery under ERISA against party in interest). Therefore, the Court cannot rule as a matter of law that Old Waste could not be held liable under ERISA.

Second, Plaintiffs argue that the merger did not, in fact, alter or eliminate Old Waste's status as a corporate entity because the Merger Agreement provided that Old Waste would merge with a New Waste subsidiary, and that Old Waste would continue as the surviving corporation after the merger. *See* Waste Management, Inc. Form DEFS14A (filed June 10, 1998) (Ex. 3 to Opp'n) [Dkt. No. 312–5]. Because these factual disputes exist, the Waste Defendants' Motion to Dismiss Counts VII and IX is **denied.**

### C. Counts XIII and XIV

Defendant State Street Bank and Trust Co. makes only one argument in support of its Motion to Dismiss: namely, that Counts XIII and XIV, which allege violations of ERISA § 406(b)(2) in the Illinois and Texas Litigations, are barred by the statute of limitations contained in § 413. First, Defendant State Street argues that Plaintiffs had actual knowledge of all the facts necessary to bring Counts XIII and XIV more than three years before the claims were first asserted in 2009. Second, Defendant State Street argues that Plaintiffs have failed to allege fraud or concealment which satisfies the tolling provision in § 413.[11]

### 1. Actual Knowledge of New Waste– State Street Relationship

Defendant State Street claims that Plaintiffs had actual knowledge about the terms of the Illinois and Texas Settlements and—more importantly—about State Street's role in those settlements more than three years prior to filing the Substitute Fourth Amended Complaint on December 15, 2009, because (1) Plaintiffs' counsel sent letters to State Street in 2002 stating that State Street was the "responsible fiduciary" in the settlements and that its participation resulted in prohibited transactions under ERISA, (2) in 2004, Plaintiffs were given the 1999 Master Trust Agreement governing the relationship between State Street and New Waste

---

**11.** Defendant State Street also argues that Counts XIII and XIV cannot be saved from dismissal under the statute of limitations by the relation back doctrine in Federal Rule of Civil Procedure 15(c). Rule 15(c) states that an amended pleading relates back to the date of the original pleading for statute of limitations purposes when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Because Plaintiffs do not oppose this argument, it is deemed conceded. *Hopkins v. Women's Div., Gen. Bd. of Global Ministries,* 284 F.Supp.2d 15, 25 (D.D.C. 2003), *affm'd* 98 Fed.Appx. 8 (D.C.Cir.2004).

which established the investment and administrative powers granted by New Waste to State Street and required State Street to act independently in the interest of the New Waste Plan, and (3) Plaintiffs possessed settlement documents describing the release of claims on behalf of the New Waste Plan against Old Waste and its "agents" in 2002.

Plaintiffs do not deny that they knew as early as 2002 that State Street was the responsible fiduciary for the New Waste Plan in the Illinois and Texas Litigations. However, Plaintiffs do dispute that the alleged principal-agent relationship between State Street and New Waste was established in the Master Trust Agreement and that "[n]othing about the Waste–State Street relationship spelled out in the Master Trust Agreement changed after 2002," as Defendant State Street claims in its Motion to Dismiss. Def. State Street's Mot. to Dismiss at 5. Because Defendants never described State Street as an "agent" of New Waste until opposing Plaintiffs' Motion for Leave to File a Fourth Amended Complaint in 2009, Plaintiffs claim that they had no actual knowledge of the principal-agent relationship until July 15, 2009, months before adding Counts XIII and XIV.

 It is clear that State Street's assertion of a principal-agent relationship raises new factual issues. At a minimum, there is a factual dispute about whether Plaintiffs had actual knowledge of that relationship in 2002, as Defendant argues. *Id.* at 2–7.

State Street contends that "nothing precludes [it] from being both an independent fiduciary as required by ERISA and by the Master Trust Agreement—and also an "agent" as that word is used in a broad litigation release of non-parties related to a corporate defendant in a class action settlement." *Id.* at 5. In support of that

position, Defendant quotes a treatise on ERISA fiduciaries stating that "ERISA fiduciaries are agents as a matter of law." Def. State Street's Reply at 2 (citing Serota & Brodie, *ERISA Fiduciary Law* (2d ed. 2006) at 828).

However, the excerpted passage from the treatise makes clear that it is discussing the relationship between a fiduciary and "plan participants and beneficiaries," *not* the relationship between a fiduciary and a plan sponsor. *Id.* There is a world of difference. State Street offers no direct support for the dubious proposition that an ERISA fiduciary may also be considered an "agent" of the company sponsoring the plan. It is not hard to imagine a conflict of interest arising when the same entity serves an ERISA plan and its participants as a fiduciary and the plan's sponsor as an agent. Even if this argument were persuasive, which the Court is not deciding at this point, by describing the relationship between New Waste and State Street in new terms as recently as 2009—as principal and agent—State Street at the very least has raised factual issues about the nature of its relationship with New Waste and the existence of potential conflicts of interest.

For these reasons, the Court concludes that Counts XIII and XIV are not barred by § 413(2)'s statute of limitations. However, both parties' emphasis on whether Plaintiffs had actual knowledge is unwarranted because § 413 provides that an ERISA claim may not be brought after the *earlier* of six years after the date of the last action which constituted a part of the breach or violation, or three years after the plaintiff had actual knowledge. Regardless of whether Plaintiffs did not gain actual knowledge until 2009, Counts XIII and XIV are time-barred because the Illinois Litigation ended in 1999 and the Texas Litigation in 2002, more than six years

before Counts XIII and XIV were brought in 2009. In order to survive the statute of limitations, then, Plaintiffs must establish that State Street engaged in fraud or concealment, which would make the statute of limitations six years from the date of discovery.

### 2. Fraud or Concealment Under § 413

Plaintiffs argue that § 413's six-year tolling provision applies because State Street concealed its position as an agent of New Waste by implicitly describing itself as an independent investment manager in the Declaration of Denise Sisk, Esq. submitted in the Texas Securities Litigation. Substitute Fourth Am. Compl. ¶ 172. Ms. Sisk asserted in her declaration that "[n]o employee of State Street or Citistreet involved in the determination [to not opt out of or object to the terms of the settlement] is employed by Waste Management or any of its subsidiaries or affiliaties." Decl. of Denise Sisk, Esq. (April 25, 2002) ¶ 8 (Ex. A. to Substitute 4th Am. Compl.). New Waste also asserted through counsel in a 2002 filing in the Texas Litigation that the Plan's decision to participate in the settlement was not made by "potentially conflicted fiduciaries", but by "State Street, the Plan's independent investment manager." Substitute 4th Am. Compl. ¶ 173.

Plaintiffs argue that Ms. Sisk's sworn declaration of State Street's independence and New Waste's representation concealed the principal-agent relationship. However, Plaintiffs have not set forth any allegations that either Ms. Sisk or New Waste knew that these statements were false. In the absence of evidence that Defendants' conduct was "designed to conceal evidence of their alleged wrong-doing," *Larson*, 21 F.3d at 1172 (citations omitted), Plaintiffs fail to establish fraud or concealment un-

der § 413.[12] Thus, the six-year statute of limitations in § 413(1) applies to bar Counts XIII and XIV, and Defendant State Street's Motion to Dismiss these Counts is **granted.**

### D. Failure to Serve

Finally, the Individual Waste Defendants note that several of them were not served with the Substitute Fourth Amended Complaint and, as a result, should be dismissed from this action. Plaintiffs did not respond to this argument in their Opposition, so it may be treated as conceded. D.D.C. Local Rule 7(b); *Fox v. Am. Airlines, Inc.*, Civ. No. 02–2069, 2003 WL 21854800, at *2 (D.D.C. Aug. 5, 2003), *aff'd*, *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291 (D.C.Cir.2004). The following seven Defendants are therefore **dismissed** from this action: the Honorable Howard H. Baker, Jr., Dr. Pastora San Juan Cafferty, Thomas R. Frank, Patricia McCann, Paul M. Montrone, D.P. Payne, and Steven G. Rothmeier.

### CONCLUSION

For the reasons set forth above, the Waste Defendants' Motion to Dismiss Counts I–V and VII–IX is **denied.** The Individual Waste Defendants' Motion to Dismiss is **granted** with respect to Counts I–V for Defendants H. Jesse Arnelle, J. Steven Bergerson, Dean L. Buntrock, Jerry E. Dempsey, Dr. James Edwards, Donald F. Flynn, Herbert A. Getz, Roderick M. Hills, Joseph M. Holsten, Peter H. Huizenga, William P. Hulligan, Edward C. Kalebich, John J. Machota, Robert S. Miller, Peer Pedersen, James R. Peterson, John C. Pope, and Phillip B. Rooney. In addition, Defendants Howard H. Baker, Jr., Dr. Pastora San Juan Cafferty, Thomas R. Frank, Patricia McCann, Paul M.

---

**12.** Plaintiffs offer no other evidence than Ms. Sisk's declaration and New Waste's filing in the Texas Litigation.

Montrone, D.P. Payne, and Steven G. Rothmeier are **dismissed** from this action. The Individual Waste Defendants' Motion to Dismiss is **denied** in all other respects. Finally, Defendant State Street's Motion to Dismiss is **granted** with respect to Counts XIII and XIV.

The Substitute Fourth Amended Complaint is now configured as follows:[13] In the first claim period, Count I alleges that the Old Waste Investment Committee and any remaining Individual Defendants who are or were members of that Committee breached their fiduciary duties under ERISA § 404 by failing to prudently manage the assets of the Plan; Count II alleges that the Old Waste Administrative Committee and any remaining Individual Defendants who are or were members of that Committee breached their fiduciary duties under ERISA § 404 by failing to provide complete and accurate information to Plan participants and beneficiaries; Count III alleges that Old Waste, the Old Waste Administrative Committee, the Old Waste Investment Committee, and any remaining Individual Defendants who are or were members of those Committees engaged in prohibited exchanges of stock between the Plan and Old Waste in violation of ERISA § 406(a)(1)(A); Count IV alleges that Old Waste, its Board of Directors, and any remaining Individual Defendants on the Old Waste Board breached their fiduciary duties under ERISA § 404 by failing to monitor the fiduciaries of the Plan; and Count V alleges that all Old Waste Fiduciaries breached their fiduciary duties under ERISA §§ 405(a)(2) and (3) by enabling their co-fiduciaries to commit the ERISA violations in Counts I–IV, and by failing to remedy them.

In the second claim period, Count VI alleges that Defendant State Street breached its fiduciary duty under ERISA § 404 by failing to adequately investigate and preserve the claims in Counts I–V in the Illinois Litigation and by causing the claims to be released; Count VII alleges that Old Waste and State Street engaged in prohibited exchanges of choses in action between the New Waste Plan and Old Waste in violation of ERISA § 406(a)(1)(A) by releasing claims in the Illinois Litigation; Count VIII alleges that the New Waste Investment Committee and any remaining Individual Defendants who are or were members of that Committee breached their fiduciary duties under ERISA § 404 by failing to adequately monitor State Street's performance in the Illinois Litigation; and Count IX alleges that State Street, Old Waste, the New Waste Investment Committee, and any remaining Individual Defendants who are or were members of that Committee breached their fiduciary duties under ERISA §§ 405(a)(2) and (a)(3) by enabling their co-fiduciaries to commit the ERISA violations described in Counts VI–VIII, and by failing to remedy them.

Finally, in the third claim period, Count X alleges that Defendant State Street breached its fiduciary duties under ERISA § 404 by failing to conduct an adequate review of the potential ERISA claims against the Old Waste Fiduciaries in the Texas Litigation, and by releasing them without adequate consideration.

A status conference shall be held in this case on **June 28, 2010** at **10:30 a.m.** An Order will accompany this Memorandum Opinion.

---

13. A table summarizing the Counts remaining in this action is attached as Appendix A to this Memorandum Opinion.